**In re TMI COORDINATED PROCEEDINGS.**

**This Memorandum Relates to All Actions *Except* CV–88–1676, CV–88–1677.**

**Civ. A. No. 88–1538.**

United States District Court, M.D. Pennsylvania.

March 16, 1990.

Lee C. Swartz, Sandra L. Meilton, Helpford, Swartz, Menaker & Morgan, Harrisburg, Pa., Arnold Levin, Laurence S. Berman, Levin, Fishbein, Sedran & Berman, Philadelphia, Pa., Dusan Bratic, Dillsburg, Pa., Louis M. Tarasi, Jr., Tarasi & Johnson, P.C., Pittsburgh, Pa., Gary A. DeVito, Arnold E. Cohen, Zarwin, Baum, Resnick & Cohen, P.C., Philadelphia, Pa., Terry S. Hy-

man, Angino & Rovner, P.C., Harrisburg, Pa., Patrick T. Sullivan, Harrisburg, Pa., for plaintiffs.

John G. Harkins, Jr., Alfred H. Wilcox, Ellen Kittredge Scott, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Fred Speaker, Pepper, Hamilton & Scheetz, Suite 400, 10 S. Market Square, Harrisburg, Pa., for defendants.

James R. Adams, Barley Snyder Cooper & Barber, Lancaster, Pa., for plaintiffs in Nos. Cv–88–1551 and Cv–88–1553.

William E. Chillas, Lancaster, Pa., for plaintiffs in No. Cv–88–1551.

Joseph F. Roda, Lancaster, Pa., for plaintiffs in No. 88–1551.

Anne L. Weismann, Theodore C. Hirt, Dept. of Justice, Civil Div., Washington, D.C., James West, U.S. Atty., Scranton, Pa., William Kanter, Peter R. Maier, Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C., for intervenor U.S.A.

Peter J. Neeson, LaBrum & Doak, Philadelphia, Pa., for Kichman plaintiffs.

Gregory Knight, Harrisburg, Pa., for Fay K. Nelms.

Joseph D. Shein, Philadelphia, Pa., for Perri Kiick.

William G. Dade, Fredericksburg, Va., Earl L. Harris, Harrisburg, Pa., for Prentiss White.

William B. Anstine, Jr., Anstine & Anstine, York, Pa., for Perri C. and Edward Kiick.

Richard P. Haaz, Reiff, Haaz & Associates, P.O., 1324 Walnut Street, Philadelphia, Pa., for Andrea Lewinter.

William Roberts Wilson, Jr., Pascagoula, Miss., for plaintiffs in Nos. Civ–88–1452 to Civ–88–1461.

## MEMORANDUM

RAMBO, District Judge.

Before the court are defendants' motion to release removal bonds and plaintiffs' motion to remand. With respect to the motion to release removal bonds, ten of seventeen plaintiffs' attorneys expressed nonconcurrence, but none filed an opposition to the motion. The plaintiffs' motion to remand, on the other hand, is opposed fiercely by defendants. This court held oral argument on the motion, permitted the United States to intervene in the action because the constitutionality of an Act of Congress affecting the public interest is at issue, *see* 28 U.S.C. § 2403(a), and received supplemental briefing from the United States and the plaintiffs. Both motions are ripe for disposition.

Background

On August 20, 1988, the Price–Anderson Amendments Act of 1988 (the Act) was enacted. The Act amended the Price–Anderson Act, 42 U.S.C. § 2210, which was originally enacted in 1957 as an amendment to the Atomic Energy Act of 1954. The Price–Anderson Act has been amended previously three times—in 1965, 1966 and 1975. The most recent amendments embodied in the Act provide for, among other things, removal to federal court of claims arising from any "nuclear incident." The relevant statutory provision, as revised by the Act, reads:

With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place, or in the case of a nuclear incident taking place outside the United States, the United States District Court for the District of Columbia, shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant or of the Commission or the Secretary, as appropriate, any such action pending in any State court (including any such action pending on the date of the enactment of the Price–Anderson Amendments Act of 1988) [enacted Aug. 20, 1988] or United States district court shall be removed or transferred to the United States district court having venue under this subsection. Process of such district court shall be effective throughout the United States. In any action that is or becomes removable pursuant to this paragraph, a petition for removal shall be filed within the period provided in

section 1446 of Title 28, United States Code, or within the 30–day period beginning on the date of the enactment of the Price–Anderson Amendments Act of 1988 [enacted Aug. 20, 1988], whichever occurs later.

42 U.S.C.S. § 2210(n)(2) (Law.Co-op.Supp. 1989). The Act also adds a definition for "public liability action." 42 U.S.C.S. § 2014(hh) (Law.Co-op.Supp.1989). That definition section also contains the provision which is at the heart of this most recent battle among the parties. That provision reads:

> A public liability action shall be deemed to be an action arising under section 170, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.

*Id.*

Within the thirty day period permitted, the defendants removed to this court most of the claims stemming from the 1979 accident at TMI. These claims are predominantly personal injury claims that were pending in the Court of Common Pleas in Dauphin County, Pennsylvania and in the Circuit Court of Jackson County, Mississippi. Additionally, there are two cases involving multiple plaintiffs alleging a loss in tourist business as a result of the 1979 TMI accident and a few cases that were pending in Lancaster, York, and Adams counties. Also removed were cases pending before the Pennsylvania Superior Court, which the Dauphin County Court of Common Pleas had dismissed on summary judgment. Also consolidated in these proceedings are two cases originally filed in the United States District Court for the Southern District of Mississippi. These two cases, how-

ever, are not covered by the scope of this memorandum.[1]

The plaintiffs filed their motion to remand contending first that Congress exceeded the scope of article III, section 2 of the United States Constitution (article III) by granting federal courts subject matter jurisdiction over the cases at bar through the Act. Plaintiffs also contend that the doctrines of separation of powers and federalism are violated by retrospectively divesting state courts of jurisdiction of long-pending cases, that plaintiffs' due process rights are violated by allowing removal of cases they had properly filed and which had been pending in state court, and that equal protection is violated because the Act increases the compensation fund for similar cases to be filed in the future but does not increase that fund for pending cases. Defendants argue that the only questions ripe for resolution at this time are whether the Act's grant of jurisdiction violates article III and, if not, whether the retrospective grant of jurisdiction is proper. Nonetheless, defendants and the United States addressed plaintiffs' other arguments in their briefs. Of course, both the defendants and the United States take the position that the Act's grant of jurisdiction is appropriate in all respects.

Defendants subsequently filed their motion to release removal bonds. The court first will address the motion to release removal bonds and then will consider to the motion to remand.

Discussion

A. Defendants' motion to release removal bonds

■ Defendants' motion to release removal bonds is based on the latest changes made to Sections 1446 and 1447 of Title 28 of the United States Code by the Judicial Improvements and Access to Justice Act,

---

1. These two cases, Nos. 88–1676 and 88–1677, originally were filed in the Southern District of Mississippi based upon diversity of citizenship jurisdiction. The cases were transferred to this court purportedly pursuant to both the Act and 28 U.S.C. § 1404 (change of venue). The cases were consolidated into these coordinated proceedings for purposes of plaintiffs' motion to remand. Since the consolidation, however, the Southern District of Mississippi court entered orders deleting the reference to the Act from the transfer orders. Therefore, these cases are here only because of 28 U.S.C. § 1404 venue considerations and, although consolidated in these proceedings, are not covered by the scope of this memorandum because this memorandum addresses only the challenge to jurisdiction over cases which are here by virtue of the Act.

(the Improvements Act), Pub.L. No. 100–702, 102 Stat. 4642 (1988). The Improvements Act, which went into effect after defendants' removal petitions and required bonds had been filed in these cases, eliminated the requirement that a bond accompany a removal petition and added a provision enabling courts to impose attorney fees as part of costs in conjunction with a remand. As noted above, only seven of seventeen attorneys for plaintiffs concurred in the motion but no briefs opposing the motion were filed. Therefore, the court deems the motion to be unopposed by the ten plaintiffs' attorneys who failed to file a brief. *See* Rule 401.6, Rules of Court for the United States District Court for the Middle District of Pennsylvania.

■ Even if the motion to release the removal bonds had been opposed properly, this court would be compelled to grant the motion. In *Air–Shields, Inc. v. Fullam*, 891 F.2d 63 (3d Cir.1989), the Third Circuit encountered a similar situation in connection with another revision under the Improvements Act which had the effect of changing the law pertaining to removal while the case was pending. The court referred to *Bradley v. Richmond School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973), in which "the Supreme Court held that 'even where the intervening law does not explicitly recite that it is to be applied in pending cases, it is to be given recognition and effect.'" *Air–Shields, Inc.*, 891 F.2d at 65 (quoting *Bradley*, 416 U.S. at 715, 94 S.Ct. at 2018) (citing *Thorpe v. Housing Auth.*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)). The Third Circuit held that "the district court was obligated to proceed under the recently amended, rather than the 1982 version of [the law]." *Id.* In accordance with *Bradley* and *Air–Shields, Inc.*, this court finds that the Improvements Act's elimination of the bond requirement necessitates granting defendants' motion to release the removal bonds.

## B. Plaintiffs' motion to remand

■ The issue at the heart of plaintiffs' motion to remand is whether Congress exceeded the scope of article III by granting federal courts subject matter jurisdiction over the cases specified in the Act, *i.e.*, public liability actions. Of course, the other issues raised by the parties need only be addressed if this court finds Congress did not exceed the scope of article III.

Article III provides, in relevant part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...." U.S. C.S. Const., Art. III, § 2, cl. 1 (Law.Co-op. 1986). It is "firmly establish[ed] that Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 491, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). As the Court in *Verlinden* noted, "The controlling decision on the scope of Art. III arising under jurisdiction is Chief Justice Marshall's opinion for the Court in *Osborn v. Bank of United States*, 9 Wheat. 738, 6 L.Ed. 204 (1824)." *Id.* 461 U.S. at 492, 103 S.Ct. at 1970. The Court in *Osborn* held that "it [is] a sufficient foundation for jurisdiction, that the title or right set up by the party, may be defeated by one construction of the constitution or law[s] of the United States, and sustained by the opposite construction." *Osborn*, 22 U.S. (9 Wheat.) at 822. "*Osborn* thus reflects a broad conception of 'arising under' jurisdiction, according to which Congress may confer on the federal courts jurisdiction over any case or controversy that might call for the application of federal law." *Verlinden*, 461 U.S. at 492, 103 S.Ct. at 1970. Both *Osborn* and *Verlinden* provide examples of well-reasoned application of the substantive law on the scope of article III "arising under" jurisdiction.

In *Osborn*, the Bank of the United States brought suit to enjoin Ohio from collecting a tax from the Bank. At issue was whether the act of Congress creating the Bank and granting its powers, including authorization "to sue and be sued ... in any Circuit Court of the United States," 22 U.S. (9 Wheat.) at 816, was sufficient to confer "arising under" jurisdiction. The Court ob-

served that the act chartering the Bank granted it all its rights and powers and that the Bank had no rights or powers apart from those conferred upon it by the act. The chartering act "bestow[ed] upon the being it has made, all the faculties and capacities which that being possessed. Every act of the Bank grows out of this law, and is tested by it. To use the language of the constitution, every act of the Bank arises out of this law." *Id.* at 827. Accordingly, the Court upheld the grant of jurisdiction.

In *Verlinden,* jurisdiction in the district court was based on the Federal Sovereign Immunities Act, 28 U.S.C. § 1330, which grants district courts subject matter jurisdiction over nonjury civil actions against foreign states. The Court held:

> At the threshold of every action in a district court against a foreign state, ... the court must satisfy itself that one of the exceptions [to immunity] applies—and in doing so it must apply the detailed federal law standards set forth in the Act. Accordingly, an action against a foreign sovereign arises under federal law, for purposes of Art. III jurisdiction.

*Id.* at 493–94, 103 S.Ct. at 1971–72. In reaching this conclusion, the Court noted that

> "the primary purpose of the Act was to se[t] forth comprehensive rules governing sovereign immunity;" the jurisdictional provisions of the Act are simply one part of this comprehensive scheme.... The Act codifies the standards governing foreign sovereign immunity as an aspect of substantive federal law, and applying those standards will generally require interpretation of numerous points of federal law. Finally, if a court determines that none of the exceptions to sovereign immunity applies, the plaintiff will be barred from raising his claim in any court in the United States—manifestly, "the title or right set up by the party, may be defeated by one construction of the ... laws of the United States, and sustained by the opposite construction."

*Id.* at 496–97, 103 S.Ct. at 1972–73 (citations omitted). The Court also recognized that in enacting the Foreign Sovereign Immunities · Act, "Congress deliberately sought to channel cases against foreign sovereigns away from the state courts and into federal courts, thereby reducing the potential for a multiplicity of conflicting results among the courts of the 50 States." *Id.* at 497, 103 S.Ct. at 1973.

In this case, the Act provides that public liability actions are deemed to "arise under" section 170 of the Atomic Energy Act of 1954 (42 U.S.C. § 2210). The law of the state in which the nuclear incident occurs will govern the rules for decision in such cases unless the applicable state law is inconsistent with section 170. Consequently, Congress has not "codifie[d] the standards" governing personal injury actions resulting from nuclear incidents "as an aspect of substantive federal law." *Verlinden,* 461 U.S. at 497, 103 S.Ct. at 1973. On the contrary, this Act precludes a "standard" because of the variances in state tort laws. In *Verlinden,* it was apparent that Congress wanted all cases against foreign sovereigns to be resolved by application of a uniform set of substantive rules. With a "codified standard" such as that contained in the Foreign Sovereign Immunities Act, the "potential for a multiplicity of conflicting results among the courts of the 50 States" truly is curtailed. *Id.* Under this Act, however, results will differ depending on the law of the state in which the nuclear incident forming the basis for the suit occurs.

Defendants contend that regardless of the fact that state substantive law governs, these actions "necessarily involve[ ] application of a body of substantive federal law." *Id.* at 497, 103 S.Ct. at 1973; *see* Defendants' Memorandum in Opposition to Plaintiffs' Petition to Remand (Defendants' Memorandum) at 13. The body of substantive federal law to which they refer is comprised of the Act itself and the Price–Anderson Act it amends. To illustrate their point, defendants use the example of plaintiffs seeking to recover for alleged increased risk of future injuries. Summarized, the argument is that a "public liabili-

ty action" is one "asserting 'public liability,'" 42 U.S.C.S. § 2014(hh) (Law.Co-op. Supp.1989), which, in turn, is defined as "liability arising out of a 'nuclear incident,'" 42 U.S.C.S. § 2014(w) (Law.Co-op. Supp.1989), which is defined as "an occurrence causing bodily injury, sickness, disease or death." 42 U.S.C.S. § 2014(q) (Law.Co-op.Supp.1989). Determining whether recovery for alleged increased risk of future injuries qualifies as "bodily injury, sickness, disease or death," defendants argue, "presents a federal question concerning the interpretation of a federal statute." Defendants' Memorandum at 14. However, because there are no substantive provisions in the federal statute pertaining to recovery for increased risk, the law of the appropriate state will provide the answer to this inquiry. There will be no need to interpret "numerous points of *federal law*" or to apply "a body of *substantive federal law*." *Verlinden*, 461 U.S. at 497, 103 S.Ct. at 1973 (emphasis added).[2]

Moreover, the Act does not satisfy the standard set forth in *Osborn;* here, "the right ... set up by the party [will not] be defeated by one construction of the ... law ... and sustained by the opposite construction." *Osborn*, 22 U.S. (9 Wheat.) at 822. In *Osborn*, the Bank had no existence without the chartering act which provided for the Bank "to sue and be sued ... in any Circuit Court of the United States." *Id.* at 816. The federal law provided the cause of action and that cause of action could be defeated depending upon construction of the federal law. Similarly, in *Verlinden*, the right to sue a foreign sovereign depended upon construction of the federal law created by the Foreign Sovereign Immunities Act. In cases brought pursuant to that act, if a court determined that none of the exceptions to sovereign immunity embodied in the federal standard were applicable, "the plaintiff [would] be barred from raising his claim in *any* court in the United States." *Verlinden*, 461 U.S. at 497, 103 S.Ct. at 1973 (emphasis added). Here, the right at issue is the right to bring an action for recovery of damages for alleged tortious injuries resulting from nuclear incidents. That right is created by state law and exists regardless of the provisions of the Act. Differing constructions of the Act would only affect the forum in which such an action is maintained. For example, if a federal court determined that a case did not qualify as a "public liability action," the case still could be brought in state court. The state court would apply the same substantive law that the federal court would have applied. The only difference would be the forum in which the case was tried. Quite simply, the right at issue here[3] is not susceptible to defeat by differing constructions of the Act.

Having considered the Act in light of *Osborn* and *Verlinden*, this court finds that the Act's jurisdictional grant exceeds the bounds of article III. Given this conclusion, the other arguments addressed by the parties need not be considered.[4] Having found that the Act's jurisdictional grant exceeds the bounds of article III, this court lacks subject matter jurisdiction over the cases removed to this court pursuant to the Act. Therefore, those cases must be remanded to the appropriate state courts. *See* 28 U.S.C. § 1447(c).

**2.** The court notes the Act's prohibition of punitive damages awards "against a person on behalf of whom the United States is obligated to make payment under an agreement of indemnification." 42 U.S.C. § 2210(s). This single provision, however, neither amounts to "a body of substantive federal law" nor requires "interpretation of numerous points of federal law." *Verlinden*, 461 U.S. at 497, 103 S.Ct. at 1973.

**3.** Contrary to defendants' assertions, this court does not believe that the right to receive a damages award from the compensation fund set up by the Act is the right to be analyzed in determining the constitutionality of the Act's grant of jurisdiction. In any event, although such a fund arguably makes it more convenient for plaintiffs to receive their awards and undoubtedly eases the financial burden of an assessment of damages upon individual defendants, the ability of plaintiffs to recover is not defeated without the existence of such a fund.

**4.** To the extent defendants and the United States raised the ground of "protective jurisdiction" as an alternative argument for upholding the Act's grant of jurisdiction, this court rejects that argument for the reasons set forth in plaintiffs' reply briefs.

## C. Reviewability of this court's decision

This court is well aware of the importance of the issue at bar to all parties involved. Therefore, it has considered the reviewability of its decision. Specifically, this court has considered certifying its decision for immediate appeal pursuant to 28 U.S.C. § 1292(b). Because this court's decision on the jurisdictional issue results in an order to remand, the question of reviewability must be considered in the context of the removal statute.

Title 28 U.S.C. § 1447(d) provides that, with the exception of civil rights cases removed pursuant to 28 U.S.C. § 1443, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Although the language of § 1447(d) appears to completely prohibit any review of any remand order, limited exceptions have been made. For example, in *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Court held that an order remanding a case based on grounds not provided by § 1447 is reviewable by a petition for mandamus. *See id.* at 351–53, 96 S.Ct. at 593–94. In reaching its holding, the Court stated, "There is no doubt that in order to prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues, *United States v. Rice*, 327 U.S. [742] at 751 [66 S.Ct. 835, 838, 90 L.Ed. 982 (1946)], Congress immunized from all forms of appellate review any remand order issued on the grounds specified in § 1447(c)...." *Id.* 423 U.S. at 351, 96 S.Ct. at 593. Consequently, in *Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1, *reh'g denied*, 431 U.S. 975, 97 S.Ct. 2941, 53 L.Ed.2d 1073 (1977), the Court reversed the review by mandamus of a district court's remand order which was based on § 1447(c). *See id.* 430 U.S. at 723–24, 97 S.Ct. 1439–40. The *Gravitt* Court stated, "*Thermtron* did not question but re-emphasized the rule that § 1447(c) remands are

not reviewable." *Id.* at 724, 97 S.Ct. at 1440.

■ Clearly, the decision to remand the cases at bar is based on § 1447(c). This court is unaware, however, of any Supreme Court or Third Circuit decision specifically addressing the question whether appellate review of certain district court remand orders issued pursuant to § 1447(c) is appropriate under § 1292(b) notwithstanding the general rule prohibiting review of such orders.[5] The Tenth Circuit addressed the question in *In re Bear River Drainage Dist.*, 267 F.2d 849 (10th Cir.1959), and held that review pursuant to § 1292(b) was not available. The Ninth Circuit addressed the same question in *National Audubon Soc'y v. Department of Water*, 858 F.2d 1409 (9th Cir.1988), and held that although remand orders are generally not appealable, certification under § 1292(b) permitted review. It should be noted that the Ninth Circuit in *Fed. Sav. and Loan Ins. Corp. v. Frumenti*, 857 F.2d 665 (9th Cir.1988), decided about two weeks before *National Audubon Society*, reached a different result. There, FSLIC had obtained certification of the district court's order pursuant to § 1292(b), petitioned the Ninth Circuit for a writ of mandamus, and filed a regular appeal under § 1291. The court denied permission to appeal under § 1292(b), denied the petition for writ of mandamus and dismissed the appeal filed under § 1291.

This court's research has revealed one case in the Third Circuit specifically addressing a request to certify a § 1447(c) remand order under § 1292(b). In *Smith v. Thomas Jefferson Univ. Hosp.*, No. 88–7345, 1989 WL 89240 (E.D. Pa. August 7, 1989) (LEXIS, Genfed library, Dist file), Chief Judge Fullam was requested to reconsider his order remanding the case to state court. He denied that motion. The movants had requested, in the alternative, certification for appeal under § 1292(b). The court noted that "[g]iven the general

---

5. This court notes that in *Air–Shields, Inc.*, the Third Circuit quoted *Thermtron* for its "explan[ation] that 'only remand orders issued under § 1447(c) and invoking the grounds specified therein ... are immune from review under § 1447(d).'" *Air–Shields, Inc.*, 891 F.2d at 66 (quoting *Thermtron*, 423 U.S. at 346, 96 S.Ct. at 590). However, the specific issue of the availability of review pursuant to § 1292(b) was not addressed.

non-appealability of remand orders, *see* 28 U.S.C. § 1447(d), there is at least a serious question as to the availability of § 1292(b) relief in these circumstances." That precise question was not resolved because the court, apparently assuming for purposes of argument that such relief was available, was "unable to conclude 'that an immediate appeal from the order may materially advance the ultimate termination of the litigation,' as required by [§ 1292(b)]." Therefore, the application for certification was denied.

■ Like Chief Judge Fullam in *Smith*, this court believes there is a serious question as to the availability of § 1292(b) relief under the present circumstances. That question, however, must be answered finally by the Third Circuit. Given the nature of the central issue in this case, this court believes review pursuant to § 1292(b) is warranted and that the issue meets the criteria of § 1292(b).

Certification of an order for immediate appeal under § 1292(b) requires a finding "that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C.S. § 1292(b) (Law.Co-op.1986). In determining whether an order involves a controlling question of law,

> [t]he key consideration is not whether the order involves the exercise of discretion, but whether it truly implicates the policies favoring interlocutory appeal. The determination ... must be made by a practical application of those policies ... [which] have included the avoidance of harm to a party pendente lite from a possible erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense.

*Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). If

this court's determination that the Act's grant of jurisdiction exceeds the scope of article III is reviewed and found to be erroneous, the cases at bar will be tried in this court and the harm to defendants of denying them the right granted by Congress to be in federal court will be avoided. Review of this issue may also save the parties time and money. Although the decision reached by the court of appeals most likely will result in a petition for writ of certiorari to the Supreme Court, if the result of all review of this issue places the cases back in this court for trial, the termination of the litigation will be in sight. If this issue is not reviewed, however, given the history of these cases following the decisions in *Stibitz v. General Pub. Utils. Corp.*, 746 F.2d 993 (3d Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985), and *Kiick v. Metropolitan Edison Co.*, 784 F.2d 490 (3d Cir.1986), and defendants' strong desire to be in federal court, it is highly likely that there will be another amendment to the Price–Anderson Act to provide for federal jurisdiction over these cases. That undoubtedly would result in another battle for remand which would involve great expenditures of time and money.[6]

Another reason, and perhaps the most compelling, for considering the issue at bar a controlling question of law is because the constitutionality of an Act of Congress is being challenged. The final determination on this issue will impact not only the parties in the instant cases but also the parties to any similar cases that may arise in the future. This jurisdictional issue requires more than a simple determination of whether public liability actions "arise under" the Act. *See* Herrmann, *Thermtron* Revisited: When and How Federal Trial Court Remand Orders are Reviewable, 19 Ariz.St. L.J., 395, 414 & n. 10 (1987–88). Rather, it involves a determination as to whether the grant of "arising under" jurisdiction itself is constitutional. Certainly, the issue is "serious to the conduct of the litigation,

**6.** It should also be noted in this regard that review of the issue will not necessarily defeat the goal of § 1447(d) to prevent delay in the trial of remanded cases. As stated above, the

history of these cases gives every indication that there will be further delay in the trial of these cases despite remand to state court.

**648**

[both] practically [and] legally." *Katz*, 496 F.2d at 755.

This court also believes there is a substantial ground for difference of opinion as to the correctness of its decision. The defendants and the United States presented strong and logical arguments for upholding the Act's jurisdictional grant. This court is not so bold as to state that its opinion on the constitutionality of an Act of Congress not previously reviewed by the courts is so plainly correct that it should not be reviewed by the appellate court.

Finally, with regard to materially advancing the ultimate termination of the litigation, this court admits, as noted above, that it is difficult to determine how that result would be accomplished most significantly. As stated previously, however, the result of appellate review of the issues at bar might prevent further delays caused by another attempt to amend the Price–Anderson Act. Therefore, this court believes appellate review of this issue is appropriate. Accordingly, this court will certify for immediate appeal under § 1292(b) the question of whether Congress exceeded the scope of article III, section 2 of the United States Constitution by granting federal courts subject matter jurisdiction over public liability actions in the Price–Anderson Amendments Act of 1988. Of course, this certification is made with the recognition that the court of appeals first will have to decide if review under § 1292(b) is even appropriate under these circumstances.

Conclusion

Based upon the preceding discussion, this court will grant defendant's motion to release removal bonds. The court also finds that Congress exceeded the scope of article III by granting federal courts subject matter jurisdiction over public liability actions through the Act. As a result of that finding, this court is without jurisdiction over the cases consolidated in these proceedings by virtue of the Act and must remand them to the appropriate state courts. Because of the importance of this issue to the parties and the court's belief that this issue meets the criteria of 28 U.S.C. § 1292(b),

however, the issue will be certified for immediate appeal pursuant to that section. Certification is made recognizing that the first question for appellate resolution will be whether § 1292(b) review is available under these circumstances.

An appropriate order will be issued.