**James R. O'CONNER, Plaintiff,**

v.

**COMMONWEALTH EDISON COMPANY, and London Nuclear Service, Inc., Defendants.**

No. 88–1272.

United States District Court,
C.D. Illinois,
Peoria Division.

July 10, 1991.

Jay H. Janssen, Peoria, Ill., for plaintiff.

Rex Linder, Peoria, Ill., Terrence E. Kiwala, Chicago, Ill., Donald E. Jose, Philadelphia, Pa., for defendants.

## ORDER

MIHM, District Judge.

Before the Court is a Motion by the Plaintiff for remand of this case to state court based upon the assertion that the

Price–Anderson Amendments Act of 1988, 42 U.S.C. § 2210(n)(2), which provides removal of cases such as this to United States District Courts, is unconstitutional.[1] This Court finds that the Act is constitutional and denies the Motion to Remand for the reasons stated herein.

## JURISDICTION

On October 1, 1985, this action was commenced by O'Conner in the Circuit Court of the Tenth Judicial Circuit of Illinois in Tazewell County.[2] O'Conner's Complaint alleged that he was a radiation worker for London Nuclear Services which had hired O'Conner to work as a pipe fitter in construction repair operations at the Commonwealth Edison Nuclear Power Plant in Cordova, Illinois. Commonwealth Edison is a public utility and London Nuclear Services was its contractor performing services at the nuclear power plant. In both counts of his Complaint, O'Conner alleged that the Defendants negligently exposed O'Conner to radiation which caused various injuries.

On September 13, 1988, the Defendants removed this case as a "public liability action" under 42 U.S.C. § 2210(n)(2). The Defendants assert that this case is a "public liability action" (under the Price–Anderson Act as amended in 1988) by a radiation worker against an Illinois public utility and its contractor. See, 42 U.S.C. § 2014(hh), (w), and (q).

O'Conner filed an objection to the removal on September 23, 1988. The Defendants responded to this objection on November 1, 1988. O'Conner then filed a reply on November 28, 1988. Finally, on December 8, 1988, the Defendants filed another reply. (See, documents #5, #7, #9, #10). The Magistrate held a hearing on the objection to the Petition for Removal on January 5,

1989. He denied O'Conner's request for remand by docket entry on that same date.[3]

O'Conner asserts that, if the Atomic Energy Act preempts state court jurisdiction, that preemption is limited solely to the exclusive jurisdiction of the federal government to control the standards and methods of regulation only and does not preempt state court jurisdiction premised upon common law negligence. See, Silkwood v. Kerr–McGee Corp., 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Further, O'Conner asserts that the sole purpose of the Price–Anderson Act was to establish an indemnification scheme where the operator of the nuclear plant would be subject to multi-million dollar judgments. Thus, O'Conner submits that the Price–Anderson Act is applicable only if the verdict potential for the injuries caused by the radioactive material exceeds $60,000,000, and only if the government must implement the indemnification procedures of the Price–Anderson Act. O'Conner notes that the joint committee report on the original version of the Price–Anderson Act indicated this limited need was the sole purpose of a limited scope of federal court intervention:

> Since the rights of third parties who are injured are established by state law, there is no interference with the state law until there is likelihood that the damages exceed the amount of financial responsibility required together with the amount of the indemnity. At that point the federal interference is limited to the prohibition of making payments to the state courts and to pro rating the proceeds available.

S.Rep. No. 296, 85th Cong., 1st Sess. 9 (1956).

As the Defendants note, however, their Petition for Removal is based upon the

---

**1.** This Motion was originally filed as a notice of a claim of unconstitutionality (#138) and was filed on February 12, 1991. However, it is clear that the notice was in effect a motion to remand based upon the discussion held at the hearing on February 12, 1991. Further, pursuant to the notice given by the Plaintiff, the United States was given an opportunity to intervene under 28 U.S.C. § 2403. The United States has intervened and filed briefs in this case.

**2.** For additional background on this case see a previous order in O'Conner v. Commonwealth Edison, 748 F.Supp. 672 (C.D.Ill.1990).

**3.** Since a written order has never been entered directly addressing the objections to the Petition for Removal, this Court feels obliged at this time to briefly consider these objections as they are somewhat related to the constitutional challenge in this case.

Price–Anderson Act of 1988 which amended the Atomic Energy Act of 1954 to provide for retroactive federal court jurisdiction over claims involving a "nuclear incident." The Price–Anderson Act amendments of 1988 broadened the scope of the Atomic Energy Act to apply to individual claims of personal injury arising out of radiation exposure. Sections 11(a)(1)(A) and (B) and § 11(a)(2) of the Price–Anderson Act amendments of 1988 amend § 170(n)(2) of the Atomic Energy Act of 1954 (42 U.S.C. § 2210(n)(2)) by striking the clause "an extraordinary nuclear occurrence" each place it appears and inserting the clause "a nuclear incident." 42 U.S.C. § 2210(n)(2) now reads as follows:

With respect to any *public liability action* arising out of or resulting from a *nuclear incident*, the United States District Court in the district where the nuclear incident takes place, or in the case of a nuclear incident taking place outside the United States, the United States District Court for the District of Columbia, *shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy.* Upon motion of the defendant or of the Commission, or the Secretary, as appropriate, any such action pending in any state court (including any such action pending on August 20, 1988) or United States District Court shall be removed or transferred to the United States District Court having venue under this subsection.... (Emphasis added).

The key terms to determine whether removal is proper are "public liability action" and "nuclear incident." The Atomic Energy Act defines a "nuclear incident" as "any occurrence" which causes an injury resulting from toxic exposure to radiation. Specifically, the Atomic Energy Act provides:

The term "nuclear incident" means *any occurrence*, including an extraordinary nuclear occurrence, within the United States causing ... bodily injury, sickness, disease, or death, or loss or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other haz-

ardous properties of source, special nuclear, or by-product material....

42 U.S.C. § 2014(q) (emphasis added).

Section 11(b) of the Price–Anderson Act amendments of 1988 defines a "public liability action" as follows:

*The term "public liability action", as used in section 2210 of this title, means any suit asserting public liability.* A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the state in which the nuclear incident involved occurs, *unless such law is inconsistent with the provisions of such section.*

42 U.S.C. § 2014(hh) (emphasis added). 42 U.S.C. § 2014(w) defining "public liability" provides in relevant part:

The term "public liability" means any legal liability arising out of or resulting from a *nuclear incident* or precautionary evacuation.... (Emphasis added).

■ After examining the amendments to the Atomic Energy Act by the Price–Anderson Act amendments of 1988, this Court concludes that the plain language of the Act, as amended, shows that Congress's intent was to broaden the scope of the Act and thereby expand coverage to individual incidents of claimed personal injury from radiation exposure. It is clear that this litigation involves a "public liability action" under 42 U.S.C. § 2210(n)(2), because this is a suit asserting "public liability" under 42 U.S.C. § 2014(hh). The alleged legal liability in this action arises out of a "nuclear incident" under 42 U.S.C. § 2014(w) as defined under the broad definition of "nuclear incident" given by the Act under 42 U.S.C. § 2014(q). Therefore, this Court has jurisdiction of this action.

## DISCUSSION

O'Conner has now asserted that this case should be remanded to state court because the removal was premised upon an unconstitutional statute, 42 U.S.C. § 2210(n)(2). O'Conner asserts that the statute is unconstitutional because Congress exceeded the scope of Article III, Section 2 of the United

States Constitution by granting federal courts subject matter jurisdiction in this case. Second, O'Conner contends that the Price–Anderson Act unconstitutionally interferes with state sovereignty by divesting a state judicial system of jurisdiction over a pending case. Third, O'Conner maintains that retroactive application of the removal provision violates the due process clause of the Fifth Amendment. Finally, O'Conner argues that the equal protection clause of the Fourteenth Amendment is violated by increasing the compensation fund for cases in the future while failing to increase that fund for pending cases.

The United States and the Defendants in this case oppose this motion.

### I. *Does Congress's Enactment of 42 U.S.C. § 2210(n)(2) Exceed the Scope of Article III of the United States Constitution?*

O'Conner first asserts that cases arising under the 1988 Price–Anderson Act Amendments do not arise under federal law. *See, Stibitz v. General Public Utilities Corp.*, 746 F.2d 993 (3rd Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985); *Kiick v. Metropolitan Edison Company*, 784 F.2d 490 (3rd Cir.1986); *Commonwealth of Pennsylvania v. General Public Utilities Corp.*, 710 F.2d 117 (3rd Cir.1983); *Duke Power Company v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Based on the foregoing cases, O'Conner asserts that Congress never intended the Price–Anderson Act to create federal substantive law supporting arising under jurisdiction in Article III, Section 2 of the United States Constitution.

This Court disagrees with O'Conner's analysis for several reasons. First, each of the cases cited by O'Conner are inapplicable to the present case because of the subsequent passage of the Price–Anderson Act amendments of 1988. Second, under certain circumstances, this Court believes that Congress has the power to incorporate state law as federal law so that state law is essentially federalized. Finally, even if the

state rules of decision which are incorporated in "public liability actions" under this Act would not be regarded as federal law, this Court concludes that Article III nonetheless authorizes federal jurisdiction given the extensive federal questions inherent in cases litigated under this Act.

Initially, this Court would note that it is clear that Congress could have preempted all state law and common law causes of actions involving nuclear incidents or nuclear power under the commerce clause of Article I, Section 8 of the United States Constitution as long as Congress provided an alternative remedy for potential plaintiffs. *See, Duke Power*, 438 U.S. at 87–89, 98 S.Ct. at 2637–39. In *Duke Power*, the Supreme Court considered a claim that the Act's provision limiting total liability to $560,000,000 violated due process because the Act failed to provide those injured by a nuclear accident with the satisfactory *quid pro quo* for the common law rights of recovery which the Act abrogated. *Id.* at 87–88, 98 S.Ct. at 2637–38. The Supreme Court stated in relevant part:

> The remaining due process objection to the liability-limitation provision is that it fails to provide those injured by a nuclear accident with a satisfactory *quid pro quo* for the common-law rights of recovery which the Act abrogates. Initially, it is not at all clear that the due process clause in fact requires that a legislatively enacted compensation scheme either duplicate the remedy at common law or provide a reasonable substitute remedy. (Footnote omitted). *However, we need not resolve this question here since the Price–Anderson Act does, in our view, provide a reasonably just substitute for the common-law or state tort law remedies it replaces.* Cf. *New York Central R. Co. v. White*, 243 U.S. 188 [37 S.Ct. 247, 61 L.Ed. 667] (1917); *Crowell v. Benson*, 285 U.S. 22 [52 S.Ct. 285, 76 L.Ed. 598] (1932). (Footnote omitted).

The legislative history of the liability-limitation provisions and the accompanying compensation mechanism reflects Congress's determination that reliance

on state tort law remedies and state-court procedures was an unsatisfactory approach to assuring public compensation for nuclear accidents, while at the same time providing the necessary incentives for private development of nuclear-produced energy.

*Id.* at 87–89, 98 S.Ct. at 2638 (emphasis added). The Supreme Court further added in relevant part in a footnote:

Appellee's only relevant right prior to the enactment of the Price–Anderson Act was to utilize their exiting common-law and state-law remedies to vindicate any particular harm visited on them from whatever sources. *After the Act was passed, that right at least with regard to nuclear accidents was replaced by the compensation mechanism of the statute, and it is only the terms of that substitution which are pertinent to the quid pro quo inquiry which appellees insist the due process clause requires.*

*Id.* at 88–89 n. 32, 98 S.Ct. at 2638 n. 32 (emphasis added).

The *Duke Power* case involved a suit by a number of individuals who lived near certain nuclear plants to challenge the $560,000,000 limitation on liability for nuclear accidents. Before the 1988 amendments to the Price–Anderson Act, the individuals living around the nuclear power plants could have asserted a public liability action under 42 U.S.C. § 2210(n)(2) only where there was an "extraordinary nuclear occurrence." In this context, as is clear from the quoted material above, the Supreme Court found that the remedies allowed in the Price–Anderson Act were sufficient. *Id.* at 87–89, 98 S.Ct. at 2637–39. As discussed earlier in the Price–Anderson Act amendments of 1988, Congress created jurisdiction for claims arising out of "nuclear incidents." *See,* 42 U.S.C. § 2210(n)(2). Thus, it appears that Congress intended that the law give rise to individual actions under the Price–Anderson Act.

Implicit in the discussion in the *Duke Power* case is that Congress has the power to federalize, at the very least, state tort law remedies. Congress also has the power to federalize state tort law, as it has

done under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.* Under the OCSLA, Congress extended the application of the Constitution and laws in the civil and political jurisdiction of the United States to the outer continental shelf to the same extent as if the outer continental shelf were an area of exclusive federal jurisdiction located within a state. 43 U.S.C. § 1333(a)(1). Since federal law might not readily supply answers to the full range of potential legal problems arising on the shelf, Congress declared that the civil and criminal laws of each adjacent state were declared to be the laws of the United States on the outer continental shelf to the extent that they were applicable and not inconsistent with the OCSLA. 43 U.S.C. § 1333(a)(2); *Rodrique v. Aetna Casualty Company,* 395 U.S. 352, 356–357, 89 S.Ct. 1835, 1837–38, 23 L.Ed.2d 360 (1969) (OCSLA provides for exclusive regulation by federal law with state law adopted as surrogate federal law). Congress then provided that district courts would have jurisdiction of cases and controversies arising out of or in connection with any operation conducted on the outer continental shelf. 43 U.S.C. § 1349(b)(1). The jurisdiction of the federal courts to hear OCSLA cases where state law by its incorporation under the Act provides the content of the federal rules of decision has not been seriously questioned. *See, Rodrique,* 395 U.S. at 356–357, 89 S.Ct. at 1837–38; *Tidelands Royalty Corp. v. Gulf Oil Corp.,* 804 F.2d 1344, 1347 n. 1 (5th Cir. 1986); *Laredo Offshore Constructors v. Hunt Oil Company,* 754 F.2d 1223, 1225 (5th Cir.1985); *Hughes v. Lister Diesels,* 642 F.Supp. 233 (E.D.La.1986).

O'Conner asserts that the OCSLA legislative scheme is distinguishable because Congress was legislating over a territory as to which it had exclusive property interests. This Court disagrees because it believes that Congress has jurisdiction over interstate commerce just as it has jurisdiction over federal territory. Congress would have the same power to federalize state causes of action asserting either basis for jurisdiction.

■ In this case, under the Price–Anderson Act amendments, Congress has essentially federalized state common law by including "nuclear incidents" under the statute granting jurisdiction to federal courts. *See,* 42 U.S.C. § 2210(n)(2). The legislative history supports this position. In its report on H.R. 1414, the House version of the amendments, the Committee on Interior and Insular Affairs explains Congress's intent as follows:

> The Committee recognizes, of course, that Article III of the Constitution limits the types of cases that federal courts created under that Article may adhere. *For this reason, H.R. 1414 expressly states that any suit asserting public liability shall be deemed to be an action arising under the Price–Anderson Act, thereby making suit asserting public liability "cases ... arising under ... the laws of the United States" within the meaning of Article III.* Rather than designing a new body of substantive law to govern such cases, however, the bill provides that the substantive rules for decision in such actions shall be derived from the law of the state in which the nuclear incident involved occurs, unless such law is inconsistent with the Price–Anderson Act. *The Committee believes that conferring on the federal courts jurisdiction over claims arising out of all nuclear incidents in this manner is within the constitutional authority of Congress and notes that Congress has used this approach in the Outer Continental Shelf Lands Act.*

H.R.Rep. No. 104, 100th Cong., 1st Sess., Part 1 at 18 (emphasis added).

Even if the state rules of decisions which are incorporated in public liability actions under the Price–Anderson Act would not be regarded as federal law, this Court believes that Article III nonetheless authorizes federal jurisdiction because federal questions will inherently arise in cases litigated under this Act. In other words, there is a significant federal ingredient to any cause of action asserted under the Price–Anderson Act.

The primary case relied on by O'Conner for the proposition that Congress cannot create Article III jurisdiction where there is no federal substantive law creating the cause of action is *In re TMI Coordinated Proceedings,* 735 F.Supp. 640 (M.D.Penn. 1990), appeal argued, 940 F.2d 832 (3rd Cir.1991). The *TMI* case held that Congress exceeded the scope of Article III by granting, through the Price–Anderson Act Amendments, subject matter jurisdiction to federal courts over public liability actions arising out of any nuclear incident. The court relied on *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824) and *Verlinden v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), in reaching its conclusions. The *TMI* court reasoned that there would be no need to interpret numerous points of federal law or to apply a body of substantive federal law; therefore, Congress had exceeded its power to grant federal courts jurisdiction under Article III.

This Court respectfully disagrees with the conclusions of the *TMI* court. Numerous federal questions will necessarily arise in the course of litigation under this Act, which questions must be resolved consistent with the pervasive federal scheme. In *Osborn,* the court was called upon to decide whether Congress could, consistent with Article III of the Constitution, grant jurisdiction to federal courts to hear cases brought by the Bank of the United States to vindicate rights based upon state law. Quoting from *Osborn,* the court in *Verlinden* stated:

> The rule is laid down that "it [is] a sufficient foundation for jurisdiction, that the title or right set up by the party, may be defeated by one construction of the constitution or law[s] of the United States, and sustained by the opposite construction."
>
> *Osborn* thus reflects a broad conception of "arising under" jurisdiction, according to which Congress may confer on the federal courts jurisdiction over any case or controversy that might call for the application of federal law.

*Verlinden,* 461 U.S. at 492, 103 S.Ct. at 1970–71 (quoting *Osborn,* 22 U.S. at 822).

The Price–Anderson Act clearly calls for the application of federal law. Initially, it must be determined as a threshold matter of federal law whether the action potentially involves a "nuclear incident" causing damage to property or persons under 42 U.S.C. § 2014(q).

Other federal questions will also arise in the course of all public liability litigation. *See, Stibitz*, 746 F.2d at 996. The Price–Anderson Act itself not only creates a cause of action under 42 U.S.C. § 2014(hh). It also provides a period of limitations for that cause of action at 42 U.S.C. § 2210(n)(1); it provides for venue at § 2210(n)(2); it provides for choice of law at § 2014(hh); it specifies limitations on punitive damages at § 2210(s); it channels liability to licensees notwithstanding the fact that they may have done no wrong at § 2014(t); it adopts an industry share liability rule at § 2210(b); it requires waivers of defenses under certain circumstances at § 2210(n)(1); and it establishes an upper bound on aggregate liability at § 2210(e). Thus, this Court believes that the Act itself contains numerous provisions of substantive federal law applicable to public liability actions.[4]

Further, as noted earlier, the Price–Anderson Act explicitly provides as follows:

> The term "public liability action", as used in § 2210 of this title, means any suit asserting public liability. A public liability action shall be deemed to be an action arising under § 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the state in which the nuclear incident involved occurs, *unless such law is in-*

*consistent with the provisions of such section.*

42 U.S.C. § 2014(hh). Under this section, even if the claim is one within the federal compensation scheme, it remains to be decided, as a matter of federal law, whether the state laws applied are inconsistent with federal law and policy embodied under the Act. This determination limits state law and may raise a federal question sufficient for Article III jurisdiction.[5]

Furthermore, the opinions cited by O'Conner which construed the Price–Anderson Act prior to its amendment would not reach a different conclusion. The question in *Stibitz*, 746 F.2d 993 and *Kiick*, 784 F.2d 490, was whether there was jurisdiction under 28 U.S.C. § 1331. In determining whether or not there is a federal question under § 1331 a court applies the well-pleaded complaint rule which provides that:

> for purposes of statutory "arising under" jurisdiction, ... the federal question must appear on the face of a well-pleaded complaint and may not enter in anticipation of a defense. (Citations omitted).

*Verlinden*, 461 U.S. at 494, 103 S.Ct. at 1971. Although the language of § 1331 parallels the "arising under" language of Article III, Section 2 of the United States Constitution, the statutory "arising under" jurisdiction is not identical to Article III "arising under" jurisdiction. *Id.* The Supreme Court has stated:

> As these decisions make clear, Article III "arising under" jurisdiction is broader than federal-question jurisdiction under § 1331, and the Court of Appeals heavy reliance on decisions construing that statute was misplaced. (Footnote omitted).

---

**4.** This Court has previously been required to resolve the question of whether the Price–Anderson Act waived defenses in this case in an earlier order. *See, O'Conner v. Commonwealth Edison*, 748 F.Supp. 672, 674–675 (C.D.Ill.1990). Also, in this Court's prior opinion, this Court found that it was necessary under § 2014(hh) to consider federal regulations on permissible dose limits in determining the duty owed by the Defendants to O'Conner. *Id.* at 678.

**5.** It should be noted that the Defendants and the United States assert that Congress may create protective jurisdiction as to cases which may on

their face seem to present purely questions of state law when they arise in the context of a pervasive federal province or program. It is unnecessary to consider this argument because this Court has concluded that it has "arising under" jurisdiction pursuant to Article III of the United States Constitution. This Court would note that the Supreme Court in the *Verlinden* case did not consider this argument where it found that Article III arising under jurisdiction was present. *See, Verlinden*, 461 U.S. at 491 n. 17, 103 S.Ct. at 1970 n. 17.

*Id.* at 495, 103 S.Ct. at 1972. Thus, cases such as *Stibitz* and *Kiick* which decided whether there is federal question jurisdiction under § 1331 are not controlling in determining the power of Congress to confer jurisdiction of the federal courts under Article III, Section 2 of the United States Constitution.

In addition, the *Commonwealth of Pennsylvania* case was not decided under the Price–Anderson Act amendments of 1988, and it merely held that there was nothing in the statute or the legislative history of the Price–Anderson Act amendments indicating that the federal courts should adopt and apply some form of *federal common law* to the issues of liability and recoverable damaged for nuclear incidents. *See, Commonwealth of Pennsylvania,* 710 F.2d at 121–122.

Moreover, the *Silkwood* case involved the interpretation of the legislative history of the Price–Anderson Act prior to the 1988 amendments. *Silkwood,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443. And, *Duke Power*'s comments that the Price–Anderson did not create a federal cause of action were also made before the 1988 amendments to the Price–Anderson Act.

II. *Do the Price–Anderson Act Amendments of 1988 Unconstitutionally Interfere With the State's Sovereignty by Divesting a State Judicial System of Jurisdiction Over a Pending Case?*

■ O'Conner asserts that the 1988 Amendments are invalid as a violation of the Tenth Amendment because they interfere with state sovereignty by divesting a state judicial system of jurisdiction over a pending case. *See, Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). This argument is rejected because no state sovereignty question is implicated. The states are not being directed to comply with federal law which is inconsistent with the exercise of their own sovereign rights. *Id.* at 548–549, 105 S.Ct. at 1016–17; *see also, Tennessee v. Davis,* 100 U.S. 257, 266–267, 25 L.Ed. 648 (1880); *Greenwood*

*v. Peacock,* 384 U.S. 808, 833, 86 S.Ct. 1800, 1815, 16 L.Ed.2d 944 (1966).

III. *Does Retroactive Application of the Removal Provision Under the Price–Anderson Act Amendments Violate the Due Process Clause of the Fifth Amendment?*

O'Conner contends that, under the due process clause of the Constitution, Congress cannot give federal courts jurisdiction over actions that arose prior to the passage of the 1988 Price–Anderson Act Amendments.

■ In making his assertion, O'Conner overlooks compelling established precedent that Congress may authorize removal of actions already pending in state courts to federal courts. *See, Railway Company v. Whitton's Administrator,* 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1871). The validity of applying the removal mechanism in the 1988 Price–Anderson Act Amendments to actions filed before enactment of the statute depends on whether such retroactive application is a rational means of achieving a legitimate congressional purpose. *See, Pension Benefit Guaranty Corp. v. R.A. Gray and Company,* 467 U.S. 717, 729–730, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601 (1984); *Usery v. Turner Elkhorn Mining Company,* 428 U.S. 1, 15–19, 96 S.Ct. 2882, 2892–94, 49 L.Ed.2d 752 (1976); *Terson Company v. Bakery Drivers and Salesman Local 194,* 739 F.2d 118, 120–121 (3rd Cir.1984).

■ Under the Price–Anderson Act Amendments, Congress wanted to facilitate equitable and uniform treatment of victims of nuclear incidents within their own states to insure the orderly distribution of funds to such victims and to encourage consolidation of public liability actions that presented similar issues. *See,* H.R.Rep. No. 104, 100th Cong. 1st Sess., Part 1 at 18, 29, Part 3 at 30; S.Rep. No. 218, 100th Cong. 1st Sess. at 13 U.S.Code Cong. & Admin.News 1988, pp. 1424, 1488. These goals are plainly legitimate, and creating removal jurisdiction over pending public liability actions was a rational means to achieve these goals. *See, In re Consolidated United States Atmospheric Testing Litigation,*

820 F.2d 982, 990 (9th Cir.1987), *cert. denied, Konizeski v. Livermore Labs,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988); *Hammond v. United States,* 786 F.2d 8, 13–14 (1st Cir.1986); *Sowell v. American Cyanamid Company,* 888 F.2d 802, 805 (11th Cir.1989).

IV. *Do the 1988 Price–Anderson Act Amendments Violate the Equal Protection Clause of the Fourteenth Amendment?*

O'Conner maintains that the 1988 Amendments to the Price–Anderson Act violate the equal protection clause because they create two classes of victims—victims of past nuclear incidents and those of future nuclear incidents—in which the future victims have a larger compensation fund available. Because no legitimate governmental purpose has been identified for allowing future victims to have available a significantly larger compensation fund, O'Conner contends that even the application of the lowest level of scrutiny under *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) yields the conclusion that the equal protection clause has been violated.

 Again, this Court rejects Plaintiff's analysis. The specific amount of funds available to satisfy all public liability claims arising from a single nuclear incident is determined by the funds available at the time of the nuclear incident and not by the size of the fund at the time a claim is filed. *See, Duke Power Company,* 438 U.S. at 63–67, 98 S.Ct. at 2625–27; 42 U.S.C. § 2210. It is clearly reasonable for Congress to periodically increase the compensation fund for future victims of nuclear incidents in anticipation of inflation and increased costs. *See also, Duke Power,* 438 U.S. at 63–67, 92–94, 98 S.Ct. at 2625–27, 2640–41.

### CONCLUSION
Based on the foregoing, this Court DENIES O'Conner's Motion to Remand.