989 F.2d 323
 Isabel YANEZ, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
Isabel YANEZ, Plaintiff,
v.
UNITED STATES of America, Third Party Plaintiff-Appellant,
v.
BROCO, INCORPORATED; J.S. Brower & Associates; and J.S.
Brower, individually, Third Party Defendant-Appellee.
 Nos. 91-15174, 91-15247.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 14, 1993.
Decided March 29, 1993.
 
 1
 Joseph J. Appel, San Francisco, CA, for plaintiff-appellant Isabel Yanez.
 
 
 2
 William F. Murphy, Asst. U.S. Atty., San Jose, CA, for defendant-third-party-plaintiff U.S.
 
 
 3
 James Duryea, Jr., Law Offices of James Duryea, Jr., San Francisco, CA, for third-party-defendant-appellee Broco, Inc.; J.S. Brower & Associates; and J.S. Brower, individually.
 
 
 4
 Appeal from the United States District Court for the Northern District of California.
 
 
 5
 Before SCHROEDER and BRUNETTI, Circuit Judges, and SAMUEL P. KING,* District Judge.
 
 SAMUEL P. KING, Senior District Judge:
 I. OVERVIEW
 
 6
 On June 11, 1986, an explosion occurred at Caelus Devices, Inc. ("CDI"), a munitions contractor for the United States. Appellant Isabel Yanez, a CDI employee, suffered third degree burns and lost her left lower arm. On February 6, 1987, Yanez filed suit in California Superior Court against Broco, Inc., J.S. Brower & Associates, and J.S. Brower (collectively "Broco") alleging that Broco supplied defective lead azide (the initiating explosive) to CDI, proximately causing her injuries. Broco was also sued by CDI. The cases were consolidated. The Yanez/Broco suit settled in April 1989 for $375,000. The CDI/Broco suit settled in May 1989 for $90,000. Pursuant to California Code of Civil Procedure § 877.6,[1] retired state court Judge J. Barton Phelps, judge pro tempore, issued orders determining good faith settlements and barring further claims.
 
 
 7
 Meanwhile, on June 7, 1988, Yanez initiated a federal suit against the United States pursuant to the Federal Tort Claims Act. Yanez alleged that the United States was negligent in inspecting and enforcing contractual safety regulations, proximately causing her injuries.
 
 
 8
 On June 20, 1989, the United States filed a third-party complaint against Broco seeking indemnity or contribution. Broco moved to dismiss under principles of good faith settlement, relying on the April 1989 settlement agreement between it and Yanez. The district court denied Broco's motion on Sept. 28, 1989. The district court, Judge Spencer Williams, found that the settlement was not made in good faith because the United States was not a party and the settlement payment was not proportionate to the parties' relative liability. In doing so, the court did not enunciate all the factors from Tech-Bilt Inc. v. Woodward-Clyde & Assoc., 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). Broco moved for reconsideration. The court did not rule on this motion.
 
 
 9
 The United States then moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings against Yanez. The district court, treating the motion as one for summary judgment, denied it on Dec. 8, 1989. It found Yanez had presented sufficient evidence that a reasonable trier of fact could find the United States was negligent. It also found that the discretionary function exemption did not apply.
 
 
 10
 On May 16, 1990, the United States then moved the court under Fed.R.Civ.P. 7(b)(1) to invoke the doctrine of judicial estoppel and dismiss Yanez' lawsuit. The United States included in its memorandum in support of its motion 1) the state court complaint, 2) Yanez' responses to the United States' request for admissions,[2] and 3) affidavits from two of Yanez' experts asserting their conclusions that the United States was responsible for the explosion causing Yanez' injuries (the affidavits did not mention defective lead azide, but rather that "electrostatic discharge" led to the explosion), purportedly to show that Yanez was asserting an inconsistent legal theory. It also referenced status conference statements by Yanez to the effect that defective lead azide caused the accident. Yanez filed opposition papers on May 29, 1990.
 
 
 11
 The court treated the motion as one for partial summary judgment. It granted it in favor of the United States, invoking the doctrine of judicial estoppel. The court barred Yanez from pleading that the cause of her accident was the government's failure to supervise and enforce regulations at CDI. Pursuant to 28 U.S.C. § 1292(b), the case was certified for appeal. Yanez petitioned for leave to file an interlocutory appeal but the Ninth Circuit denied it on August 27, 1990.
 
 
 12
 On Sept. 26, 1990, the United States moved pursuant to Rules 7(b) and 12(b)(6) for a final entry of judgment, asserting that due to the previous order granting partial summary judgment "plaintiff has no other issue with the U.S. before the court." In addition to previously submitted material (state court complaint, etc.), the United States filed excerpts from Yanez' deposition testimony. Yanez asked the district court for a reconsideration of the court's ruling on judicial estoppel.
 
 
 13
 On Oct. 29, 1990, third-party defendant Broco again moved to dismiss the United States' third party complaint and for an entry of judgment. Broco asserted that 1) the good faith settlement between Yanez and Broco barred the third-party complaint and 2) by reason of the court's order filed on July 11, 1990 the third-party complaint for contribution no longer stated a claim upon which relief could be granted.
 
 
 14
 The court heard the Sept. 26 and Oct. 29 motions on November 28, 1990. Yanez argued, among other points, that because she had no notice that the court was considering partial summary judgment, it never gave her a chance to dispute facts considered by the court. She only presented argument in her May 29, 1990 opposition regarding the legal issue of judicial estoppel.
 
 
 15
 On December 14, 1990, in Yanez v. United States, 753 F.Supp. 309 (N.D.Cal.1990) ("Yanez I "), the court granted the United States' motion, treating it as one for summary judgment, entering final judgment against Yanez pursuant to Fed.R.Civ.P. 58. It denied Yanez' motion for reconsideration and granted Broco's motion to dismiss the third-party complaint. The opinion contained no explanation for why the third-party complaint was dismissed. On April 26, 1991, however, in granting a Motion for Review of Awards and Costs by the United States, the court clarified its December 14, 1990 order which dismissed Broco by stating "once having granted summary judgment to the USA, there was no reason to adjudicate the third party plaintiff case. The court did not grant the motion to dismiss on the good faith settlement issues."
 
 
 16
 Two appeals are before us. Yanez appeals the grant of summary judgment, disputing the court's ruling on judicial estoppel. The government appeals the dismissal of Broco, contingent on Yanez prevailing, asking this court to reinstate the third-party claim. Broco in turn argues that, even if Yanez is successful, this court should affirm the granting of its motion to dismiss and find that the suit was settled in good faith.
 
 II. DISCUSSION
 
 17
 A. Judicial Estoppel.
 
 
 18
 This court reviews grants of summary judgment de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). A court invokes judicial estoppel at its discretion. Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991).
 
 
 19
 The precise law of judicial estoppel is unclear in the Ninth Circuit. Morris v. California, 966 F.2d 448 (9th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992), is instructive:
 
 
 20
 As a general principle, the doctrine of judicial estoppel bars a party from taking inconsistent positions in the same litigation.... Although this circuit has adopted the doctrine of judicial estoppel, we have not yet determined the circumstances under which it will be applied.... The majority of circuits recognizing the doctrine hold that it is inapplicable unless the inconsistent statement was actually adopted by the court in the earlier litigation; only in that situation, according to those circuits, is there a risk of inconsistent results and a threat to the integrity of the judicial process.... The minority view, in contrast, holds that the doctrine applies even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing "fast and loose" with the court.... In either case, the purpose of the doctrine is to protect the integrity of the judicial process. Accordingly, the doctrine of judicial estoppel "is an equitable doctrine invoked by a court at its discretion."
 
 
 21
 Id. at 452-53 (citations omitted).
 
 
 22
 Although the Ninth Circuit has not yet specifically adopted either the "majority" or "minority" view, various circuit cases contain language upon which the parties base their arguments. Appellant Yanez relies on Arizona v. Shamrock Foods Co., 729 F.2d 1208 (9th Cir.1984), cert. denied, 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985):
 
 
 23
 A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention.
 
 
 24
 Id. at 1215 (quoting Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir.1953)) (appellant's emphasis). She asserts that the highlighted elements are lacking.
 
 
 25
 The government relies on Stevens Technical Services, Inc. v. S.S. Brooklyn, 885 F.2d 584, 589 (9th Cir.1989); Russell v. Rolfs, 893 F.2d 1033 (9th Cir.1990); and Rockwell Intern. Corp. v. Hanford Atomic Metal Trades Council, 851 F.2d 1208, 1210 (9th Cir.1988) ("[t]he doctrine is intended to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions.") (citations omitted). It claims that the district court was correct under either the majority or the minority test. "Inconsistency" of factual or legal position is a threshold requirement of either test. E.g., Morris, supra; Shamrock Foods, supra.
 
 
 26
 In granting summary judgment to the government, the district court specifically found as follows:
 
 
 27
 Because Yanez has played "fast and loose" with the courts, judicial estoppel applies. The claims asserted by Yanez in state court and in this action are conflicting, and pleading inconsistent facts is not permissible in two separate actions. There is no requirement that the claims be in the same court, because such a requirement would subvert the reason for judicial estoppel. Privity of parties is not required, but even if it is, it exists here.
 
 
 28
 Yanez I, 753 F.Supp. at 314.
 
 
 29
 We disagree. Again, it is not necessary to adopt either the "minority" or "majority" position. But, even if the minority position applies, there was no "fast and loose" behavior here. Yanez asserted in the state court complaint that defective lead azide supplied by Broco caused her injuries. In her federal court complaint she asserted negligence on the part of the United States for failure to enforce contractually required safety standards. In a pretrial statement, Yanez asserted that the explosion was caused by electrostatic discharge resulting from government negligence. The federal complaint did not assert defective lead azide. There was evidence that the United States could have been negligent since the district court denied the United States' motion for summary judgment against Yanez. The two claims are not necessarily inconsistent. There could be concurrent causes of her injuries. Both (or neither) Broco and the United States could be negligent. Further, the government identifies the misconduct as plaintiff's response to the request for admissions. See supra n. 2. Even if incorrect, this statement did not mislead anyone to their detriment.
 
 
 30
 We also agree with Yanez' argument that for jurisdictional reasons she had no choice but to split her claims. The forum for the products liability claim against Broco was state court--Yanez and Broco are citizens of California. For the Federal Tort Claims Act suit, Broco would have been a pendent party, jurisdiction over whom the Ninth Circuit did not recognize. Ayala v. United States, 550 F.2d 1196, 1200 (9th Cir.1977), cert. granted, 434 U.S. 814, 98 S.Ct. 50, 54 L.Ed.2d 70 (1977), cert. dismissed, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978).[3] Thus, Yanez could not have chosen a forum to assert the "conflicting" claims together (although because the United States in turn impleaded Broco, there was ancillary jurisdiction).
 
 
 31
 Because Yanez' behavior was not "fast and loose" we need not reach the issue of whether a good faith settlement constitutes "prior success" required under the "majority position."
 
 
 32
 B. The Contingent Appeal: Reinstatement of the Third-Party Complaint.
 
 
 33
 The question now arises whether we should also reverse the order dismissing the third party complaint. The court originally denied Broco's motion to dismiss on Sept. 28, 1990 because it found the settlement was not in good faith. The court dismissed Broco on December 14, 1990, but only because the third-party claim was moot.[4] Broco is not appealing from the Sept. 28 order. Rather, it asks this court to affirm the Dec. 14 dismissal of Broco and now rule as a matter of law that the Yanez/Broco settlement was in good faith. The government asks that this court reverse dismissal of Broco and reinstate the third-party complaint.
 
 
 34
 A finding of good faith under Cal.Civ.P.Code § 877 is a finding of fact. Owen v. United States, 713 F.2d 1461, 1466 (9th Cir.1983) (citing River Garden Farms, Inc. v. Superior Court, 26 Cal.App.3d 986, 998, 103 Cal.Rptr. 498, 506 (1972)). The government asserts that "only a trial court may reach a decision [on § 877 good faith], guided by the evidentiary material presented to it." River Garden Farms, supra.
 
 
 35
 The government also emphasizes that the court did not rule on Broco's motion for reconsideration of the Sept. 28, 1989 Order. If the Yanez-United States case is reinstated, the district court will again have jurisdiction to determine whether the Yanez-Broco suit was settled in good faith, i.e. to rule on Broco's outstanding motion for reconsideration.
 
 
 36
 The government also argues that Broco's motions to dismiss the third-party complaint were actually motions for summary judgment since Broco went beyond the pleadings and asked the court to consider exhibits (twenty exhibits in the first motion, twenty-five in the motion for reconsideration). As summary judgment motions, the United States argues that material issues of fact remain as to whether the settlement was in good faith. Indeed, Broco spends much of its brief arguing facts that it asserts the district court did not consider in its initial ruling on Sept. 28, 1989. Broco also contends that "new facts" have arisen since the Sept. 28th motion which also support a good faith settlement. The government responds that, even if this court were to invoke its discretionary powers, the government must be allowed a hearing on the question. It cites Singer Co. v. Superior Court, 179 Cal.App.3d 875, 890, 225 Cal.Rptr. 159 (1986) (notice and hearing required before denial of property interest).
 
 
 37
 We agree that whether a settlement is in good faith under Cal.Civ.P.Code § 877 is a finding of fact for the trial court. We reverse and reinstate Broco. The district court should rule on Broco's motion for reconsideration and consider all Broco's arguments. The district court is advised to apply all the factors enunciated in Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159 (1985). It appears that the district court overlooked several of these factors when determining the settlement was not in good faith. The factors are:
 
 
 38
 1. A rough approximation of plaintiffs' total recovery and the settlors' proportionate liability;
 
 
 39
 2. The amount paid in settlement;
 
 
 40
 3. The allocation of settlement proceeds among plaintiffs;
 
 
 41
 4. A recognition that a settlor should pay less in settlement than he would if he were found liable after trial;
 
 
 42
 5. The financial conditions and insurance policy limits of settling defendants; and,
 
 
 43
 6. The existence of collusion, fraud, or tortious conduct aimed to injure the interest of non-settling defendants.
 
 
 44
 Tech-Bilt, 213 Cal.Rptr. at 262-63, 698 P.2d at 166-67.
 
 III. CONCLUSION
 
 45
 We REVERSE the order granting summary judgment to the government. We also REVERSE the order dismissing the third party claim against Broco. On remand the district court is directed to rule on Broco's motion for reconsideration regarding good faith settlement between Yanez and Broco and consider all the factors enunciated in Tech-Bilt.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 Section 877.6 states in pertinent part:
 (a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice thereof in the manner provided in subdivision (b) of Section 1005....
 (b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.
 (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.
 
 
 [2]
 Yanez responded "denied" to a request for admission reading: "Plaintiff is of the opinion that defective dextrinated lead azide supplied by Broco, Incorporated to Caelus Devices, Inc. on June 9, 1986 caused her accident of June 11, 1986."
 
 
 [3]
 Although Congress has now explicitly authorized pendent party jurisdiction ("supplemental jurisdiction"), 28 U.S.C.A. § 1367 (West Supp.1992), the section is not retroactive. Section 1367 applies to civil actions commenced on or after Dec. 1, 1990. The Judicial Improvements Act of 1990, Pub.L. No. 101-650, § 310(c)
 
 
 [4]
 As noted before, Judge Williams clarified his dismissal of Broco on April 25, 1991 by stating: "because one having granted summary judgment to the government on the judicial estoppel issue, there was no reason to adjudicate the third-party plaintiff's case. The court did not grant the motion to dismiss on the good faith settlement issues." After disposing of Yanez' case against the United States, the district court had no subject matter jurisdiction over Broco