**RADIATION STERILIZERS, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**IOTECH, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Nos. CS–91–155–AAM, CS–91–154–AAM.**

United States District Court, E.D. Washington.

Oct. 31, 1994.

Clifford J. Zatz, Luis R. Mejia and Cindy M. Bryton of Akin, Gump, Strauss, Hauer and Feld, L.L.P., Washington, DC and James S. Berg of Halverson & Applegate, Yakima, WA, for plaintiff Iotech, Inc. (in No. CY–91–154–AAM only).

Roy P. Lessy, Jr. and Jeffrey K. Sherwood of Akin, Gump, Strauss, Hauer and Feld, L.L.P., Washington, DC and James S. Berg of Halverson & Applegate, P.S., Yakima, WA, for plaintiff Radiation Sterilizers, Inc. (in No. CY–91–155–AAM only).

David F. Jurca of Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, WA, for defendant Rockwell Intern. Corp. (in both cases).

William R. Squires of Davis Wright Tremaine, Seattle, WA, for defendant Battelle Memorial Institute. (in both cases).

Assistant U.S. Atty. James Schivley, Spokane, WA, and Frank W. Hunger and Richard R. Stone, U.S. Dept. of Justice, Washington, DC, for defendant Dept. of Energy of the U.S. of America (in No. CY–91–155–AAM only).

## ORDER DETERMINING APPLICABLE STATE LAW

MCDONALD, District Judge.

Before the Court for resolution without oral argument [1] is Defendant Rockwell's Mo-

1. RSI requested oral argument; the request was denied.

tion for Order Determining Applicable State Law, Ct.Rec. 135 in No. CY–91–154–AAM and Ct.Rec. 219 in No. CY–91–155–AAM. Plaintiff Iotech, Inc. ("Iotech"; in No. CY–91–154–AAM only) is represented by Clifford J. Zatz, Luis R. Mejia and Cindy M. Bryton of Akin, Gump, Strauss, Hauer and Feld, L.L.P., Washington, D.C., and James S. Berg of Halverson & Applegate, P.S., Yakima, Washington. Plaintiff Radiation Sterilizers, Inc. ("RSI"; in No. CY–91–155–AAM only) is represented by Roy P. Lessy, Jr. and Jeffrey K. Sherwood of Akin, Gump; and Berg. Defendant Rockwell International Corporation ("Rockwell"; in both cases) is represented by David F. Jurca of Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Washington. Defendant Battelle Memorial Institute ("Battelle"; in both cases) is represented by William R. Squires of Davis Wright Tremaine, Seattle, Washington. Defendant Department of Energy of the United States of America ("DOE"; in No. CY–91–155–AAM only) is represented by Assistant United States Attorneys Frank W. Hunger and James Schivley of Spokane, Washington; and Richard R. Stone of the United States Department of Justice, Washington, D.C.[2]

## A. FACTUAL BACKGROUND[3]

As a part of its defense waste management program, DOE decided in the 1970s to separate cesium–137 from radioactive military wastes at the Hanford Nuclear Reservation in Washington. DOE also decided to encapsulate the cesium in double-walled steel cylinders.

Rockwell and Battelle performed the majority of the design and testing work for this program. They also ran the waste separation program and manufactured the cesium capsules.

In the mid–1980s, DOE entered into discussions with Iotech and RSI about using DOE's cesium capsules as a radiation source in plaintiffs' commercial irradiators. (Iotech and RSI are separate private corporations in

the business of using radiation to sterilize consumer goods.) Shortly thereafter, Iotech and RSI leased the cesium capsules from DOE and took possession of them.

About two years later, one of the capsules in RSI's Decatur, Georgia plant leaked in the plant's storage pool. The leak seriously contaminated the facility, caused the complete shutdown of operations, and required several years of cleanup operations.

After determining that the leak might have been caused by capsule defects, DOE recalled all cesium capsules from both plaintiffs' facilities.

## B. LITIGATION BACKGROUND

Plaintiffs filed suit, claiming that defendants designed, tested, manufactured, and leased capsules that were unsafe as designed and as manufactured. Plaintiffs' claims against Rockwell and Battelle are brought under the Washington Product Liability Act ("WPLA") and the Uniform Commercial Code. RSI's claims against DOE are brought under the Federal Tort Claims Act, which incorporates the WPLA. RSI also alleges tortious spoilation of evidence against DOE and Battelle, alleging that they destroyed evidence by conducting destructive testing on the leaking capsule.

Plaintiffs' original and first amended complaints, filed in mid–1991, addressed only federal law. Plaintiffs' second amended complaints, addressing Washington law, were filed on January 6, 1992.[4] Iotech's current complaint alleges:

> IOTECH is a Colorado corporation.... DOE's negligence was the proximate cause of injury to IOTECH.... As a direct and proximate result of Rockwell and Battelle's negligence in failing to provide postmanufacture warnings.... [and] [a]s a direct and proximate result of this breach [of Rockwell and Battelle's express warranty to IOTECH that the cesium capsules would be safe for use in IOTECH's com-

**2.** DOE was originally named as a defendant in CY–91–154–AAM. On July 30, 1993, the Court transferred all of Iotech's claims against DOE to the Court of Claims.

**3.** Facts recited in this section are used for summary purposes only and are subject to later modification.

**4.** RSI also filed a third amended complaint on February 26, 1993.

mercial irradiator].... [and] [a]s a direct and proximate result of this breach [of Rockwell and Battelle's implied warranty that the WESF capsules they designed and manufactured were safe, merchantable, and fit the intended and foreseeable uses of the capsules], IOTECH sustained damages and losses including loss of its property in that its license was restricted and the cesium capsules were rendered unsafe to use in IOTECH's [Colorado] facility; loss of profits; loss of customers; loss of goodwill; interruption of business at the Northglenn[, Colorado] facility; loss of access to operating cash and credit; loss of business opportunities; loss of investment; diversion of management time and resources; and future costs of demolishing the Northglenn[, Colorado] facility....

Second Amended Complaint [and] Demand for Jury Trial, Ct.Rec. 47 in No. CS–91–154 ["Iotech's Complaint"], at 2, 41–45.[5] RSI's current complaint alleges:

RSI is a California corporation....

DOE's negligence was the proximate cause of injury to RSI.... As a direct and proximate result of the above—Rockwell and Battelle's defective design and manufacture of the capsules; failure to provide adequate warnings; and breach of express and implied warranties—RSI has sustained damages for which Rockwell and Battelle are strictly liable.... As a direct and proximate result of Rockwell and Battelle's negligence in failing to provide post-manufacture warnings.... [and] [a]s a direct and proximate result of this breach [of Rockwell and Battelle's express warranties].... [and] [a]s a direct and proximate result of this breach [of Rockwell and Battelle's implied warranties].... [and] [a]s a direct and proximate result of [DOE's] breach and spoilation of evidence.... [and] [a]s a direct and proximate result of [Battelle's] spoilation, RSI sustained damages and losses including loss of use of the Decatur[, Georgia] facility; loss of use of the Westerville[, Ohio] facility; loss of

profits; loss of customers; destruction of irradiation equipment and [Ohio and Georgia] facilities through radioactive contamination; interruption of business at the Decatur[, Georgia] and Westerville[, Ohio] facilities; costs for cleanup activities related to decontamination of the Decatur[, Georgia] facility; cost of replacement of radioisotope sources for use at Westerville[, Ohio]; loss of access to operating capital and credit; loss of market share; diminution of value of the company; increased financing costs; loss of business opportunities; diversion of management time and resources; increased operating costs; additional administrative costs; future costs of reopening (if permitted to do so) or permanently closing the Decatur[, Georgia] facility; adverse publicity; loss of customer confidence; increased costs of and potential failure to recover damages in civil litigation as a result of destruction of evidence; harm to RSI's business reputation; and such other damages as RSI may prove at trial.

Third Amended Complaint [and] Demand for Jury Trial, Ct.Rec. 72 in No. CS–91–155 ["RSI's Complaint"], at 2, 44, 48–52, 57–62.

Defendants filed motions to dismiss in late 1991. The Court on July 30, 1993 transferred Iotech's claims against DOE to the Court of Claims. The Court on June 10, 1994 dismissed RSI's claims against DOE for failure to warn, and for negligent design, manufacture and testing of the capsules. Claims against DOE for negligent lease of defective products remain, as do all claims against Rockwell and Battelle.

Dispositive motions are due by November 22, 1994. Hearing is set for January 17, 1995, at 9:30 a.m., in Yakima, Washington.[6]

Trial is set for May 16, 1995, at 9:30 a.m., in Yakima, Washington.[7]

### C. DETERMINATION OF APPLICABLE STATE LAW

*Party contentions.* Rockwell moves for an order determining that the applicable state

---

5. Count I was transferred to the Court of Claims.

6. The extent of oral argument shall be determined after receipt of responsive briefing on December 15, 1994.

7. RSI's claims against DOE will be tried to the bench. All claims against Rockwell and Battelle will be tried to a jury.

law is the substantive law of Georgia. It contends that plaintiffs' claims arise from a "nuclear incident" that occurred in Georgia within the meaning of the Price–Anderson Act. DOE joins in Rockwell's motion.

RSI opposes Rockwell's motion. RSI contends that the doctrines of judicial estoppel, equitable estoppel and waiver preclude reliance on the Price–Anderson Act. It contends that plaintiffs have long known of the Price–Anderson Act but chose to rely on Washington law, and that change of controlling law now would be inequitable. Alternatively, RSI contends that even if the Price–Anderson Act applies, that its choice of law provisions require application of Washington law. It contends that the "nuclear incident" was the manufacture, design, testing and marketing of the cesium capsules, which occurred in Washington.

Iotech also opposes Rockwell's motion. It contends that the Price–Anderson act is inapplicable to its claims because it is not alleging public liability arising out of a "nuclear incident". (None of Iotech's capsules leaked.) Rather, it sues under product liability law, alleging the defective design and manufacture of the capsules it leased. Alternatively, Iotech argues that even if the Price–Anderson Act applies, that its choice of law provisions require application of Washington law. It contends that the tort was more closely related with Washington than with Georgia.

Battelle has not responded to Rockwell's motion.

### C(1). APPLICATION OF PRICE–ANDERSON ACT

The Price–Anderson Act provides in pertinent parts:

(hh) The term "public liability action" . . . means any suit asserting public liability. . . . [T]he substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section [42 U.S.C. § 2210, "Indemnification and limitation of liability" of contractors by the Nuclear Regulatory Commission].

(w) The term "public liability" means any legal liability arising out of or resulting from a nuclear incident . . . except (i) claims under . . . workmen's compensation acts . . .; (ii) claims arising out of an act of war; and [claims under] . . . (a), (c), and (k) of section 2210 of this title . . . for loss of, or damage to, or loss of use of property which is located at the site of and used in connection with the licensed activity where the nuclear incident occurs. "Public liability" also includes damage to property of persons indemnified: *Provided,* That such property is covered under the terms of the financial protection required, except property which is located at the site of and used in connection with the licensed activity where the nuclear incident occurs.

(q) The term "nuclear incident" means any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . .

(j) The term "extraordinary nuclear occurrence" means any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which . . . [is] substantial, and which . . . has resulted or will probably result in substantial damages to persons offsite or property offsite . . .

42 U.S.C. § 2014(hh), (w), (q) and (j) (emphasis in original).[8,9] The interpretation of the choice-of-law provision of § 2014(hh), espe-

---

**8.** The Price–Anderson Act was amended in 1992, after initiation of these actions. The amendment was minor and did not affect § 2014 except in subsection (v) (definition of "production facility").

**9.** The terms "byproduct material", "person" and "person indemnified" are also defined in § 2014, but their applicability is not disputed.

cially in deciding where a nuclear incident "occurred", is a novel issue of law.[10]

■ *"Nuclear incident."* The leak of the cesium capsule at RSI's Georgia facility was an occurrence causing loss of or damage to property, or loss of use of property, resulting from the hazardous properties of byproduct material. It was a nuclear incident. (The Court makes no finding whether it was an "extraordinary nuclear occurrence".)

The occurrence was the leak, rather than the allegedly defective manufacture or design. That is evident by application of the "but-for" test to plaintiffs' claims. But for the leak, plaintiffs would have no claims of property damage. RSI's Georgia plant would not have been contaminated. The Georgia, Colorado and Ohio plants would not have suffered damage from potential other leaks, because the leakage potential of the other capsules was not evident until the Georgia capsule leaked. *See* the Court's Order of June 10, 1993, Ct.Rec. 88 in CS–91–0155, at 17 (finding that Iotech cannot recover in tort unless it can "borrow a 'remote occurrence' which results in injury to another.")

■ It is immaterial that some of the property damage plaintiffs allege is intangible. (The statute describes "property of persons", but does not define "property".) A "person" includes a corporation. 42 U.S.C.

---

10. This Court is the only court to have discussed, even in part, where a nuclear incident "occurs":

> Absent any dispute as to where the nuclear incidents alleged occurred, the court finds § 2014(hh) unambiguous in its call for the application of the "law" of only one state. *In re Hanford Nuclear Reservation Litigation,* 780 F.Supp. 1551, 1571 n. 36 (E.D.Wash.1991). *See also id.,* at 1569–70 (summarily noting that "[t]he parties agree (as does the court) that all 'incidents' alleged occurred in Washington").

The only other published cases discussing § 2014(hh) at length focus on other issues, and do not interpret where a nuclear incident "occurred". *See In re TMI Litigation Cases Consolidated II:*

> § 2014(hh) goes somewhat further than an ordinary choice of law rule. If a public liability action proceeds in state court, federal law requires that court to apply the law of the state where the nuclear incident occurred, even if state law would otherwise look to the law of some other state.

940 F.2d 832, 863–65 (3d Cir.1991), *cert. denied, sub nom. Gumby v. General Public Utilities Corp.,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992). *See also id.,* at 837, 844 n. 8, 851, 854 (referencing § 2014(hh) in legislative history). *See O'Conner v. Commonwealth Edison Co.:*

> The Price–Anderson Act only allows the application of state law as long as it is not contrary to the Act, (*see,* 42 U.S.C. § 2014(hh). If the application of Illinois law does not result in the adoption of the federal permissible dose limits as the duty owed by the Defendants, this Court believes that Illinois law would be inconsistent with federal law and that federal law would have to take precedence.

748 F.Supp. 672, 676–78 (C.D.Ill.1990), *aff'd,* 13 F.3d 1090, 1096 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994). *See also id.,* at 674 (referencing § 2014(hh) in legislative history).

None of the other published cases referencing § 2014(hh) discuss extensively the choice-of-law

provision. *See O'Conner v. Commonwealth Edison Co.,* 770 F.Supp. 448, 450–51 (C.D.Ill.1991), *aff'd,* 13 F.3d 1090, 1096 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994) (both referencing § 2014(hh) in legislative history); *Building and Construction Dep't v. Rockwell International Corp.,* 756 F.Supp. 492, 493 (D.Colo.1991) (summarily noting in factual background that Colorado law applied under § 2014(hh)), *aff'd,* 7 F.3d 1487, 1490 and n. 3 (10th Cir.1993) (referencing district court's "[a]pplying Colorado substantive law as directed by the Price–Anderson Act"); *Day v. NLO, Inc.,* 3 F.3d 153, 154 n. 1 (6th Cir.1993) (referencing § 2014(hh) in legislative history); *In re Aircrash in Bali,* 684 F.2d 1301, 1309 (9th Cir.1982) (referencing Price–Anderson's "economic regulation" in Warsaw Convention action); *Day v. NLO, Inc.,* 851 F.Supp. 869, 876 (S.D.Ohio 1994) (referencing § 2014(hh) in legislative history); *Lamb v. Martin Marietta Energy Systems, Inc.,* 835 F.Supp. 959, 962 (W.D.Ky.1993) (summarily noting in factual background that action was a "public liability" action under § 2014(hh)); *Day v. NLO, Inc.,* 811 F.Supp. 1271, 1277 n. 4 (S.D.Ohio 1992) (summarily noting in factual background that Ohio law applied under § 2014(hh)); *Landry v. Florida Power & Light Corp.,* 799 F.Supp. 94, 96 (S.D.Fla.1992) (summarily noting in factual background that Florida law applied under § 2014(hh)), *aff'd without op.,* 998 F.2d 1021 (11th Cir.1993); *Brown v. Centerior Energy Corp.,* No. 1:91CV0332, 1992 WL 694453, at *5, 1992 U.S. District LEXIS 21325, at *14 (N.D.Ohio 1992) (summarily noting in factual background that Ohio law applied under § 2014(hh)); *In re DES Cases,* 789 F.Supp. 552 (E.D.N.Y.1992) (referencing Price–Anderson in non-nuclear mass tort action); *Coley v. Commonwealth Edison Co.,* 768 F.Supp. 625, 628 (N.D.Ill. 1991) (referencing § 2014(hh) in legislative history); *Cook v. Rockwell Intern. Corp.,* 755 F.Supp. 1468, 1471 (D.Colo.1991) (summarily noting in factual background that Colorado law applied under § 2014(hh)).

§ 2014(s). It is long established in contract and tort law that a business's property includes intangibles such as loss of profits and goodwill. *See, e.g., Backus v. Ft. Street Union Depot Co.,* 169 U.S. 557, 580, 18 S.Ct. 445, 454, 42 L.Ed. 853 (1898).[11] Here, subsection (q)'s other provisions provide broad coverage. Therefore, the Court interprets "property" broadly both to effectuate the intent of Congress, and to give the word its everyday meaning in tort and contract law.

■ *"Public liability."* RSI's action asserts legal liability from a nuclear incident, for loss of property located at the site of and used in connection with the nuclear incident. Specifically, RSI alleges liability for loss of property at its Georgia facility; that is where the nuclear incident occurred.

RSI's action also asserts liability for loss of property at its Ohio facility, and property at its California situs. (Damages to intangible property of a corporation, such as loss of profits and goodwill, "occur" where the corporation is incorporated.) However, it would be absurd to find that RSI had a public liability action in part (for its allegations of damages in Georgia) and a non-public liability action in part (for its allegations of damages elsewhere). That result would lead to trial chaos, as well as contravening the intent of Congress:

> Absent any dispute as to where the nuclear incidents alleged occurred, the court finds § 2014(hh) unambiguous in its call for the application of the "law" of only one state.

*In re Hanford Nuclear Reservation Litigation,* 780 F.Supp. 1551, 1571 n. 36 (E.D.Wash.1991).

Iotech's action does *not* assert legal liability from a nuclear incident, for loss of property located at the site of and used in connection with the nuclear incident. Iotech does not allege any injury to property in Georgia.

11. Insurance law holds otherwise, differentiating between property and lost profits policies. *See, e.g., Lassen Canyon Nursery v. Royal Ins. Co.,* 720 F.2d 1016, 1018 (9th Cir.1983).

12. The Court again rejects the analysis of the Third Circuit, decided three months before the Court's own decision in *In re Hanford:*
§ 2014(hh) goes somewhat further than an ordinary choice of law rule. If a public liability

It alleges injury only to its Colorado facility and its Colorado situs.

■ *"Public liability action."* RSI's suit is a public liability action, because it asserts public liability. Therefore, the substantive rules for decision in its action shall be derived from the law of Georgia, where the nuclear incident occurred. 42 U.S.C. § 2014(hh). As the Court explained in *In re Hanford,* § 2014(hh) does not dictate substantive law but rather provides for the applicable law on choice-of-law. *In re Hanford,* 780 F.Supp. at 1571 ("[the phrase "law of the State" ... mean[s] the *whole* law of the state, including any choice of law provisions").[12] Thus, the Court still needs to examine Georgia's choice-of-law provisions to determine which state's substantive law applies.

■ Iotech's suit is *not* a public liability action, because it does not assert public liability. Therefore, federal statute does not dictate choice of law. As the Court sits in diversity, it must apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Federal Ins. Co. v. Scarsella Bros., Inc.,* 931 F.2d 599, 603, *amended,* 91 C.D.O.S. 3391, 91 Daily Journal D.A.R. 5444 (9th Cir.1991) (citing other authority). Iotech's case originates in the Eastern District of Washington. Therefore, the governing choice of law principles here are those of the State of Washington.

## C(2). JUDICIAL ESTOPPEL, EQUITABLE ESTOPPEL, WAIVER AND LAW OF THE CASE

RSI contends that application of Price–Anderson's choice-of-law principles is barred by the doctrines of judicial estoppel, equitable estoppel, waiver and law of the case.

action proceeds in state court, federal law requires that court to apply the law of the state where the nuclear incident occurred, even if state law would otherwise look to the law of some other state.
*In re TMI Litigation Cases Consolidated II,* 940 F.2d at 863–65.

■ *Judicial estoppel.* RSI contends that the doctrine of judicial estoppel bars Rockwell from making inconsistent legal or factual assertions in the same litigation. Specifically, RSI contends that the Court has expended substantial resources evaluating Rockwell's claims and defenses under Washington law, so now RSI should be precluded from asserting that other law governs.

"[T]he doctrine of judicial estoppel bars a party from taking inconsistent positions in the same litigation." *Morris v. California,* 966 F.2d 448, 452 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992) (citing other authority). There are two versions of the doctrine:

> The majority of circuits recognizing the doctrine hold that it is inapplicable unless the inconsistent statement was actually adopted by the court in earlier litigation.... The minority view, in contrast, holds that the doctrine applies even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing "fast and loose" with the court.

*Id.,* 966 F.2d at 452–53 (internal citations omitted). While the Ninth Circuit has adopted the principle of judicial estoppel, it has not yet specifically adopted either of the majority or minority positions. *Id.,* 966 F.2d at 453; *Yanez v. United States,* 989 F.2d 323, 326 (9th Cir.1993).

The conduct at issue in *Morris* and *Yanez* was the plaintiffs' adoption of case positions that were apparently inconsistent with their earlier positions. Morris stated at her criminal trial that she did not use methamphetamine prior to her arrest; she then filed a habeas corpus petition contending that her trial counsel was ineffective in failing to recognize the legality of her use of methamphetamine prior to her arrest. The district court found that Morris was judicially estopped from taking her second position. The Ninth Circuit reversed, holding that "the doctrine of judicial estoppel may not be invoked where its use would serve to keep a conviction in effect regardless of the innocence or guilt of the defendant." *Morris,* 966 F.2d at 453.

In *Yanez,* Yanez filed a state court personal injury suit against a private defendant, alleging that she had suffered injuries when an explosion occurred at a munitions factory where she was employed. In her state court complaint, she contended that defective lead azide (the initiating explosive) supplied by the private defendant proximately caused her injuries. While that suit was pending, Yanez filed a federal court suit against the United States. In that complaint, she contended that the United States was negligent in inspecting and enforcing contractual safety regulations, proximately causing her injuries. The district court found that Yanez was judicially estopped from taking her second position. The Ninth Circuit reversed, finding that the two positions were not necessarily inconsistent, that the second position did not mislead anyone to their detriment, and that for jurisdictional reasons Yanez had no choice but to split her claims.

Here, Rockwell has not taken inconsistent positions in its factual allegations; applicable state law is a legal conclusion rather than fact. Rockwell argued (briefly, in its Motion to Dismiss) that Washington law applied. However, Rockwell's statements were never adopted by the Court; the issue of applicable law *was not addressed* until now. (RSI and Iotech adopted Rockwell's prior choice-of-law argument, in the Motions to Dismiss.) Further, Rockwell never adopted contrary legal claims, but rather makes contrary legal arguments; that is not unknown in this Court (witness RSI's and Rockwell's instant pleadings, which each make arguments in the— inconsistent—alternative). Although Rockwell's delay in moving for a determination of applicable law is unfortunate, judicial estoppel does not bar a determination of applicable law.[13]

13. RSI alleges that Rockwell's delay is in bad faith because Rockwell long knew of the location of the leaked capsule, but declined to raise Price–Anderson's choice-of-law provision until now. The Court finds no evidence of bad faith. Rockwell could both know of the location of the leaked capsule, yet fail to recognize that this implicated Georgia law under Price–Anderson. The fact that Rockwell's counsel was involved in the *In re Hanford* litigation, where application of the Price–Anderson Act also was at issue, does

The Court notes that even had Rockwell made contrary assertions of fact or law here, the Court would not be required to apply equitable estoppel. As its name suggests, the doctrine is an equitable one subject to equitable policy considerations. Here, there is strong Congressional intent regarding choice-of-law in Price–Anderson:

> the substantive rules for decision in [a public liability] action *shall* be derived from the law of the State in which the nuclear incident occurs ...

42 U.S.C. § 2014(hh) (emphasis added). Party allegations to the contrary could not negate Congress's mandate.

■ *Equitable estoppel.* RSI contends that the doctrine of equitable estoppel bars Rockwell from making assertions contrary to its earlier assertions, and upon which earlier assertions RSI has relied. Specifically, RSI contends that Rockwell knew of Price–Anderson's choice-of-law provisions, acted in a manner justifying RSI's belief that Rockwell had agreed to application of Washington law, and finally that RSI *did* rely on that belief to its detriment (*i.e.*, its incurrence of legal fees in defending the motions to dismiss made under Washington law).

"Estoppel prevents a party from showing the truth contrary to a representation of facts after another has relied upon the representation." *United States v. Hall*, 974 F.2d 1201, 1205 (9th Cir.1992) (citing other authority). More specifically,

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the

latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Watkins v. U.S. Army*, 875 F.2d 699, 709 (9th Cir.1989), *cert. denied*, 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990) (citing other authority). A court "can refuse to apply the doctrine when policy considerations so demand." *Hall*, 974 F.2d at 1205.

First, RSI has not demonstrated that Rockwell "knew the facts," *i.e.* that Price–Anderson's choice-of-law provision looked to Georgia law. (Further, that is a legal conclusion, not a fact, regardless of Rockwell's knowledge.) Second, RSI has not demonstrated that Rockwell acted with intent or so as to justify RSI's reliance. Rockwell did not make any affirmative act or statement indicating that it believed Washington law applied, or stand silent while Washington law was asserted. Rockwell did not explicitly question RSI's pleading of Washington law in its complaint, but Rockwell's answer cannot, in its numerous denials, be construed as admitting to application of Washington law.[14] Third, RSI has not demonstrated that it was ignorant of the true facts. It was as knowledgeable about the factual location of the capsule leak as was Rockwell, and its counsel were as knowledgeable about the public Price–Anderson statute as was Rockwell's counsel. Fourth, RSI has not demonstrated that it relied upon Rockwell's assertions to its detriment. RSI may have suffered injury, but that is as likely caused by RSI's own ignorance of the application of Price–Anderson than of Rockwell's ignorance (or its interpretation of facts known to both parties).[15]

not change the Court's conclusion that RSI has not established Rockwell's bad faith.

**14.** Rockwell does admit that venue is proper in this district, which is a separate issue. *See* Rockwell's Answer to Third Amended Complaint, Ct. Rec. 81, at ¶ 1.

**15.** The parties dispute whether RSI suffered injury. RSI contends that it has "wasted" the past three years of discovery, motion practice and trial preparation if the Court rules that Georgia law applies. Rockwell contends that RSI's discovery is governed by procedural rules and common-sense "gather all you can" practice and so

would not have proceeded differently if RSI had known Georgia law controlled. Rockwell further contends that no dispositive motions were decided against RSI in this interval, and that much of the three years was spent relatively idly because of previous Judge McNichols' illness.

The Court finds that RSI may have suffered injury in the form of expended legal effort on Washington law. However, neither in discovery not motion practice has it been precluded or denied anything as a result of the assumption that Washington law applied. This case has not yet been finally decided; even dispositive motions are still forthcoming. Therefore, RSI suffered no prejudice by the delay.

Rockwell has not made a representation, contrary to a previous representation upon which RSI has relied. Equitable estoppel does not bar a determination of applicable law. Further, as discussed in the preceding section, conflicting party representations could not negate Congress's mandate in § 2014(hh).

■ *Waiver.* RSI contends that the doctrine of waiver bars Rockwell from making assertions which it has waived by delay. Specifically, RSI contends that Rockwell knew of Price–Anderson's choice-of-law provisions but intentionally delayed in raising the issue, thereby waiving it.

Standard waiver doctrine defines waiver as " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Barker v. Wingo,* 407 U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972), quoted in *United States v. Sandoval,* 990 F.2d 481, 483 (9th Cir.1993).

Here, RSI has not demonstrated that Rockwell *intentionally* delayed. Further, it is questionable whether choice-of-law is a party "right" rather than a procedural rule. The Court finds that Rockwell has not waived the choice-of-law analysis.[16] Further, any delay was relatively brief; certainly Rockwell raised the issue before trial or summary judgment.[17] Finally, as discussed two sections previous, party (in)action could not negate Congress's mandate in § 2014(hh).

■ *Law of the case.* RSI contends that application of Georgia law is barred by the law of the case. It contends that Washington law has impliedly governed its claims so far.

The law of the case is another equitable doctrine:

The Court agrees with Rockwell that any wasted litigation effort here is minimal compared to the wasted effort if this case is decided on Washington law, reversed on appeal, and remanded to be retried under Georgia law.

16. RSI's authority is inapplicable. Those cases concern party waiver of voluntary choice-of-law agreements, or are extra-jurisdictional cases regarding application of state law. None hold that a federal statute's choice-of-law provisions can be waived.

The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition. A significant corollary to the doctrine is that dicta have no preclusive effect. Application of the doctrine is discretionary.

*Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 715 (9th Cir.1990) (internal citations omitted).

The most RSI can argue in the way of Court application of Washington law is that RSI sought and was granted leave to amend its complaint to conform to Washington law after Rockwell raised the issue in its Motion to Dismiss; that Judge McNichols preliminarily indicated he would grant Rockwell's motion to dismiss but changed his preliminary indication once the state supreme court ruled on the outstanding issue; and that the Court rendered detailed analyses of Washington law in denying defendant's two sets of motions to dismiss.

The Court has *never* ruled on the applicability of state law to RSI's or Iotech's claims, although it has analyzed the validity of plaintiffs' claims under Washington law. *See* Order Granting Plaintiff Radiation Sterilizers, Inc.'s Motion for Leave to Amend Its Complaint, Ct.Rec. 47 in CS–91–0155 (granting leave to amend upon party stipulation; not addressing application of Washington law); Order of March 17, 1992, Ct.Rec. 51 in CS–91–0155, at 4, 16 ("The tentative ruling remains ... As to Iotech, the government's motion to dismiss the FTCA claim is grant-

17. Likely a challenge to choice-of-law can be made for the first time on appeal. *See, e.g., Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 646 (3d Cir.1958) ("National cannot be considered to have waived its right to have the contract interpreted under the proper law by failing to raise the question in the District Court"); *Pecheur Lozenge Co. v. National Candy Co.,* 315 U.S. 666, 667, 62 S.Ct. 853, 853, 86 L.Ed. 1103 (1942) (remanding for application of "the appropriate local law").

ed", etc.; interpreting Washington law without ruling that Washington law applied); Order of June 10, 1993, Ct.Rec. 88 in CS–91–0155 (denying motions to dismiss; interpreting Washington law without ruling that Washington law applied); Order re: United States' Third Motion to Dismiss and Motion for Summary Judgment, Ct.Rec. 216 in CS–91–0155 (granting dismissal of one negligence claim against DOE; denying dismissal of other claims; interpreting Washington law without ruling that Washington law applied). Until now, the Court has only been called upon to interpret the validity of claims as plaintiffs pled them, not as Price–Anderson dictates. Thus, although the Court decided issues *under* Washington law, it has never decided, implicitly or explicitly, *that* Washington law applied. The doctrine of law of the case does not apply.

Thus, none of the doctrines of judicial estoppel, equitable estoppel, waiver or law of the case bar a determination of applicable law under Price–Anderson.

### C(3). APPLICABLE STATE LAW ON RSI'S CLAIMS

■■■ As discussed in section C(1), the applicable substantive law on RSI's claims is derived from the choice-of-law provisions of Georgia law. That law provides:

Georgia generally adheres to the traditional choice of law system, under which tort actions are adjudicated according to the law of the place where the wrong occurred.

*Karimi v. Crowley,* 172 Ga.App. 761, 762, 324 S.E.2d 583 (1984) (internal citations omitted);

[T]ort actions are adjudicated according to the law of the place where the wrong occurred, and contract actions are regulated by the law of the state where the contract was made when matters of execution, interpretation, or validity are at issue, and by the law of the state where it is to be performed when the issue is one concerning performance.

*Wallace v. Harrison,* 166 Ga.App. 461, 462–63, 304 S.E.2d 487 (1983);

The law of the place where the tort or wrong has been committed is the law by which the liability is to be determined, and the place of wrong is the place where … there takes place the last event necessary to make an actor liable for an alleged tort.

*Wardell v. Richmond Screw Anchor Co.,* 133 Ga.App. 378, 380, 210 S.E.2d 854 (1974), citing *Brooks v. Eastern Air Lines, Inc.,* 253 F.Supp. 119, 121 (N.D.Ga.1966);

The place of a wrong is the jurisdiction where the harm was suffered or where the last event necessary to make an actor liable for the alleged tort takes place.

*Velten v. Lippert,* 985 F.2d 1515, 1521 (11th Cir.1993).

Under Georgia law, products liability claims are claims in tort. Ga.Code Ann §§ 51–1–1, 51–1–11(b)(1), 51–12–5.1(e)(1) (Michie 1994). *See also, Welch v. Celotex Corp.,* 951 F.2d 1235, 1236 (11th Cir.1992) ("this products liability suit … claim[ed] negligence and strict liability in tort"); *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 770 (1976), *reh'g denied,* 561 F.2d 831 (5th Cir.Ga.1977) ("[Section 51–1–11(b)(1) ] mak[es] manufacturers strictly liable in tort").[18] RSI's products liability claims shall be governed by the law of Georgia, because that is where the nuclear incident—the event without which there would be no claim, and so the last event necessary to create liability—occurred, and where the alleged injuries (tangible and intangible) occurred.

Breach of warranty claims are treated in unusual fashion, being tort claims if they appear similar to an injury claim and contract claims otherwise:

In that a breach of warranty involving an injury is analogous to a tort action, it is reasonable to conclude that the orthodox "place of injury" rule should apply to warranties.

*Whitaker,* 418 F.2d 1010, 1016 n. 9 (5th Cir. 1969), *reh'g denied,* 424 F.2d 549 (5th Cir. 1970) [19];

---

**18.** *Higginbotham* was decided before the 1981 Fifth Circuit split, when Georgia was part of the Fifth rather than Eleventh Circuit.

**19.** *Whitaker* was decided before the 1981 Fifth Circuit split, when Georgia was part of the Fifth rather than Eleventh Circuit.

It is unclear exactly where [Georgia's implied warranty of merchantability] fits on the tort v. contract scale.... In *Whitaker v. Harvell–Kilgore Corp.*, 418 F.2d 1010 (5th Cir.1969), *reh'g denied*, 424 F.2d 549 (1970), the Fifth Circuit confronted this question and ... h[e]ld that a federal court should look not to the place of the sale (*lex loci contractus*) but to the place of the injury (*lex loci delicti*).... In the absence of any Georgia authority ... this court is obligated to follow the Circuit's interpretation. Further, under the facts of this case, it is appropriate to apply tort-based theories of analysis. There is a colorable argument that no contract exists.... The presidents of both companies [defendant and a third party owning the machine at issue] stated in affidavits that no warranties or representations were made.... Labeling this claim as one based on personal injury not only more closely resembles the facts of the case, but also is in keeping with the deeply ingrained public policy in Georgia of maintaining the privity requirement before a party can bring a warranty claim.

*Morgan v. Mar–Bel, Inc.*, 614 F.Supp. 438, 442 (N.D.Ga.1985) (internal citations omitted; emphasis in original).[20]

Here, RSI's breach of warranty claims appear to be claims in contract, because no personal injury is alleged and there exists contracts among the parties (at the very least, the indemnity provisions created by Price–Anderson). Because RSI challenges performance of the contract, RSI's breach of warranty claims shall be governed by the state where the contract—leasing of the capsules—was to be performed. (The contract was *not* performed in Washington; the contract would not be performed if the capsules had only been designed and manufactured but not leased to RSI's Georgia facility.) Even if RSI's breach of warranty claims were claims in tort, they would again be governed by Georgia law because that is where the nuclear incident occurred, and where the alleged injuries occurred.[21]

Thus, the applicable state law on RSI's claims is that of Georgia.

### C(4). APPLICABLE STATE LAW ON IOTECH'S CLAIMS

■ As discussed in section C(1), the applicable substantive law on Iotech's claims is derived from the choice-of-law provisions of Washington law. That law provides:

To determine which state's law applies to a particular issue, Washington has adopted the "most significant relationship" test as set out in the Restatement (Second) of Conflict of Laws § 145 (1971). *Johnson v. Spider Staging Corp.*, 87 [Wash.]2d 577, 580, 555 P.2d 997 (1976). The Restatement (Second) of Conflict of Laws § 145 provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

---

20. The Eleventh Circuit's rationale regarding Georgia warranty law may be explained by its preliminary discussion of Florida warranty law:

The Florida Supreme Court adopted the Economic Loss Rule which bars recovery in tort for "purely economic losses," absent personal injury or damage to other property.... Fueling the exclusion of tort recovery is the notion that contract principles are more appropriate than tort principles to resolve purely economic claims.... For innocent bystanders and consumers who are injured or have property damaged, tort and strict liability apply, serving the purpose of tort law to distribute the risk of loss to members of society in a situation where

private contract cannot anticipate and compensate for the risk; in a commercial setting, the parties are free to negotiate who will bear the risk of loss.

*Airport Rent–A–Car, Inc. v. Prevost Car, Inc.*, 18 F.3d 1555, 1558 (11th Cir.1994) (certifying issues of application of the economic loss rule to the state supreme court; internal citations omitted).

21. Here RSI's product liability and breach of warranty claims all arose in Georgia. Had they not, the Court might apply the Congressional goal of having only one state's law apply to an action *despite* otherwise disparate claims.

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

Section 6 states the factors relevant to the choice of the applicable law:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

[ (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,]

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result[, and

(g) ease in the determination and application of the law to be applied.]

Restatement (Second) of Conflict of Laws § 6 (1971).

*Rice v. Dow Chemical Co.*, 124 Wash.2d 205, 213, 875 P.2d 1213 (1994). "Washington has adopted the significant relationship approach to resolving both tort and contract choice of law issues." *Van Vonno v. Krush*, 120 Wash.2d 416, 418, 841 P.2d 1244 (1992) (citing other authority).

Here, both Colorado and Georgia have a significant relationship to the occurrence and the parties. The place where the injury occurred is Colorado; that is where both tangible damages (to the Colorado facility) and intangible damages (to the Colorado situs of the corporation) occurred. The place

where the conduct causing the injury occurred is Georgia; that is where the nuclear incident occurred.[22] The places of incorporation and places of business of the parties is a less important factor, given the size of the parties and their resulting ability to incur travel costs, as well as the multiplicity of such places. These places are Colorado, Iotech's place of incorporation; California, the principal place of business of Rockwell; and Ohio, the place of incorporation and principal place of business of Battelle.[23] The place where the relationship among the parties is centered is a less important and indeterminable factor, because the parties' relationship presumed that each party would perform acts in separate states.

Which state had the *most* significant relationship to the occurrence and the parties? The Court applies the principles of the Restatement § 6, and finds as it did before:

[T]he function of the statutory reference [in § 2014(hh) ] to state law (but for certain clearly delineated federal exceptions) ... [is] to place the invoking plaintiff in the same position as one asserting similar or parallel state court provisions.

.... The court also finds its conclusion to be not inconsistent with the congressional mandate that "victims of a nuclear incident receive 'equitable and uniform treatment' ".... Absent any dispute as to where the nuclear incidents alleged occurred, the court finds § 2014(hh) unambiguous in its call for the application of the "law" of only one state.... This result can therefore be said to be "uniform" in treatment, as that body of law will be the same (at least theoretically) for all persons similarly situated. It can also be fairly regarded as "equitable," and indeed more so than any system which mandates, without further thought, the blind application of some state's substantive law provisions.

*In re Hanford Nuclear Reservation Litigation*, 780 F.Supp. at 1570, 1571 n. 36 (internal

---

**22.** Arguably Washington was the site of the alleged negligence; the Court rejected that argument above in section C(1).

**23.** Other relevant places are Oregon, the situs of Iotech's parent company; Delaware, the place of incorporation of Rockwell; and Washington, the situs of Battelle's Pacific Northwest Laboratories.

citation omitted).[24] Thus, the applicable state law on Iotech's claims is that of Georgia.

## D.  VENUE

Venue in RSI's action may be proper in Georgia:

> With respect to any public liability action arising out of or resulting from an extraordinary nuclear occurrence, the United States district court in the district where the extraordinary nuclear occurrence takes place ... shall have original jurisdiction....  Upon motion of the defendant ... any such action pending in any ... United States district court shall be ... transferred to the United States district court having venue under this subsection.

42 U.S.C. § 2210(n)(2).

Similarly, venue in Iotech's action may be appropriate in Georgia:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**24.** Iotech appears to argue that it and RSI are *not* similarly situated, because Iotech sues only under product liability (having experienced no leak in its own facility).  The Court rejects that argument.  RSI's and Iotech's claims overlap in large part.  Iotech alleges:

> loss of its property in that its license was restricted and the cesium capsules were rendered unsafe to use in IOTECH's [Colorado] facility; loss of profits; loss of customers; loss of goodwill; interruption of business at the Northglenn[, Colorado] facility; loss of access to operating cash and credit; loss of business opportunities; loss of investment; diversion of management time and resources; and future costs of demolishing the Northglenn[, Colorado] facility.

Iotech's Complaint, at 41–45.  RSI analogously alleges:

> loss of use of the Decatur[, Georgia] facility; loss of use of the Westerville[, Ohio] facility; loss of profits; loss of customers; ... interruption of business at the Decatur[, Georgia] and Westerville[, Ohio] facilities; ... loss of access to operating capital and credit; loss of market share; diminution of value of the company; increased financing costs; loss of business opportunities; diversion of management time and resources; increased operating costs; additional administrative costs; future costs of reopening (if permitted to do so) or permanently closing the Decatur[, Georgia] facility;

28 U.S.C. § 1404(a).  Because no motion to change venue has been filed, the Court makes no findings or decisions on the issue of proper venue.

## E.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Rockwell's Motion for Order Determining Applicable State Law is **GRANTED.** The applicable state law on Iotech's claims in No. CY–91–154–AAM is that of Georgia.  The applicable state law on RSI's claims in No. CY–91–155–AAM is that of Georgia.

**IT IS SO ORDERED.**  The Clerk is instructed to enter this Order accordingly and forward copies to counsel.

> ... loss of customer confidence; ... harm to RSI's business reputation.

RSI's Complaint, at 44, 48–52, 57–62.  RSI also alleges damages from the leaked cesium capsule that Iotech does not:

> destruction of irradiation equipment and [Ohio and Georgia] facilities through radioactive contamination; ... costs for cleanup activities related to decontamination of the Decatur[, Georgia] facility; cost of replacement of radioisotope sources for use at Westerville[, Ohio]; ... adverse publicity; ... increased costs of and potential failure to recover damages in civil litigation as a result of destruction of evidence....

*Id.*  The Court finds that the uniqueness of these claims, though they are not *de minimis* in value, is outweighed by the similarity of the other claims to Iotech's.  The Court also notes that Iotech's claimed damages, resulting from alleged increased risk of capsule leaks, are not very different than the increased risk of injuries claimed in many public liability actions under Price–Anderson.  *See, e.g., In re TMI Coordinated Proceedings,* 735 F.Supp. 640, 645 (M.D.Pa. 1990), *vacated, In re TMI Litigation Cases Consol. II,* 940 F.2d 832 (3d Cir.1991), *cert. denied, sub nom. Gumby v. General Public Utilities Corp.,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).  Equity requires equal treatment, and identical application of law, for both claimed nuclear incident victims: RSI and Iotech.